Revocation of Wolf's License.

Argued September 26, 1934.

Before KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*Lemuel B. Schofield,* and with him *W. Bradley Ward,* for appellant.

*Wilhelm F. Knauer,* Special Deputy Attorney General, with him *George W. Keitel,* Assistant Deputy Attorney General, and *Wm. A. Schnader,* Attorney General, for appellee.

OPINION BY KELLER, J., January 4, 1935:

The question involved in this appeal is, does the court of quarter sessions have power to revoke a restaurant liquor license issued by the Pennsylvania Liquor Control Board, under the Act of November 29, 1933, (Special Session 1933-4, P. L. 15), where the licensee, who had pleaded guilty to violations of prior liquor laws, obtained the license by falsely representing in his application therefor that he had never been indicted for or convicted of crime.

On December 4, 1933 Oscar Wolf applied to the Pennsylvania Liquor Control Board for a restaurant license for 303 North Sixth Street, Philadelphia, under the Act aforesaid, for the year ending December 31,

1934, on the form prepared and provided by the Board. The application, which was signed by him and sworn to by him before a Notary Public the same day, contained, inter alia, the following questions:

"10. Has the applicant......been indicted or convicted of crime? If so, give date, charge and record of proceedings."

To which he answered, "No."

"11. Has the restaurant building or any part thereof been subject to State or Federal padlock or nuisance proceedings? If so, give date and record of proceedings."

To which he answered "No."

The license was issued by the Board pursuant to said application on December 11, 1933.

On January 17, 1934 the Attorney General filed his petition in the Court of Quarter Sessions of Philadelphia County praying that court to revoke the license on the grounds that the answers to said questions were false and fraudulent and contrary to the provisions of the Act of November 29, 1933 aforesaid and the rules and regulations of the Board made pursuant thereto, in that the applicant, Oscar Wolf, had been indicted for crime and that his restaurant building had been padlocked under decree of the Court of Common Pleas No. 1 of Philadelphia County, sitting in equity, in the case of Com. of Pa. v. Oscar Wolf et al., to March Term 1931, No. 14887; and that the premises set forth in the application was not a reputable place operated by responsible persons of good reputation as required by said Act. No answer was filed by the respondent licensee, thus admitting the averments of the petition. A hearing was had, however, at which testimony was taken, by which it was shown that between October 26, 1921 and May 20, 1931 the respondent had been arrested thirteen times for violation of the liquor laws of this Commonwealth and had pleaded guilty four

times—see opinion of the lower court, pp. 15a-17a; and that his place had been padlocked in 1931 for liquor violations as averred in the petition.

The court below revoked the license. Respondent has appealed.

He contends that under the Act of 1933, supra, his license cannot be revoked for anything except a violation of a law of this Commonwealth relating to liquor, malt liquor or alcohol, done or committed after the grant and issuance of the license.

Section 410 is the part of the Act having immediately to do with the Revocation and Suspension of Licenses. It provides: "After a license has been issued to a hotel, restaurant or club under this act, the attorney general, the district attorney, or fifteen or more taxpayers, residents of the municipality where the hotel, restaurant or club is located, may petition the court of quarter sessions of the proper county for the revocation of such license. If, after notice and hearing, it shall appear to the court that the licensee has violated any law of this Commonwealth or regulation of the board relating to liquor, malt liquor, or alcohol, the court may suspend or revoke the license. The court shall assess or remit the costs in its discretion. The action of the court in suspending or revoking a license shall be final. Any licensee whose license is revoked shall be ineligible to have a license or permit under this act, or under any other act relating to the manufacture, sale or distribution of liquor or malt liquor, until the expiration of five years from the date his license was revoked." But there are other portions of the Act to be considered in construing the provisions of section 410.

The first question that arises is the right of the respondent to appeal in view of the declaration in the section that "The action of the court in suspending or revoking a license shall be final." We considered this

question in Revocation of License of Jacob Mark, 115 Pa. Superior Ct. 256, 176 A. 260, and came to the conclusion, in a somewhat similar case, that an appeal in the nature of a certiorari will lie in order that we may inspect the record, with regard to the regularity and propriety of the proceedings, to ascertain whether the court below exceeded its jurisdiction or its proper legal discretion.

We come then to the main question—Did the court below, in revoking the appellant's license exceed its jurisdiction or its proper legal discretion?

The Act of November 29, 1933, supra, is entitled, inter alia, "An act to regulate and restrain the sale, importation and use of certain alcoholic beverages." Section 3, which relates to the interpretation of the Act, provides: "(a) This act shall be deemed an exercise of the police power of the Commonwealth for the protection of the public welfare, health, peace and morals of the people of the Commonwealth, and to prohibit forever the open saloon; and all of the provisions of this act shall be liberally construed for the accomplishment of this purpose." The Act established an entirely new system of liquor control designed (1) to do away with saloons or mere drinking places and restrict the sale of spirituous and vinous alcoholic liquors to clubs, and to hotels and restaurants where meals are regularly and habitually prepared for the public; (2) to limit the licensing of hotels and restaurants to "reputable places, operated by responsible persons of good reputation"; (3) to require a complete separation of financial and business interests and relations between the manufacturer of such liquors and the holder of a hotel, restaurant or club liquor license; (4) to prohibit all other transactions in such liquors within this Commonwealth, except by and under the control of the Pennsylvania Liquor Control Board, a new authority, created to carry the provi-

sions of the Act into effect. The grant or issuance of licenses to clubs, hotels and restaurants, as defined in the Act, was placed in the Board, (sec. 201-d), and authority was given the Board to make such regulations, not inconsistent with the Act, as it might deem necessary for the efficient administration of the Act (sec. 202), and specific authority was given the Board to make regulations regarding "Forms to be used for the purposes of this Act" (sec. 203-g); all of which regulations, when adopted by the Board are declared to have the same force as if they formed part of the Act (sec. 202).

The Board, in its endeavor to carry out the aims and purposes of the Act, and to perform the duties imposed upon it, prepared a form of application to be used by applicants for a Restaurant Liquor License which propounded certain questions and called for answers that would supply information needed by it in passing on the merits of the application and the fitness of the applicant to have a license. They included, inter alia, the name, address and citizenship of the applicant, the length of his residence in the Commonwealth, a full description of the place to be licensed, giving the area, number of tables with which it is equipped, the number of persons who could be accommodated in the dining room at one time, and the number of persons regularly employed in the preparation of meals, the name and address of the owner of the premises, whether the applicant is interested in any manner, directly or indirectly, in the manufacture, etc. of liquors in this State or in the ownership, mortgage or leasehold of any property used in such manufacture, or whether any person interested in the manufacture, etc. of such liquors has any stock, ownership, mortgage or leasehold interest in the applicant's restaurant property or equipment, its fitting out, maintenance or conduct. Then followed questions 10 and 11, above

quoted, to which the appellant made false answers, and question 12 which inquired "Has applicant or manager ever held a beverage or liquor license which was revoked? If so, give date and record of proceedings." To which the applicant answered "No."

The regulations prepared by the Board pursuant to the authority conferred by the Act, which have the force of law, as aforesaid, require written applications, in the form prepared by it as aforesaid, to be signed and sworn to by the applicant for license, and filed with the Board, and such verified applications are used by the Board as a basis in disposing of the application, by granting or refusing the license. Once the license is issued, the Board's control over it is ended. It cannot revoke a license issued to a club, restaurant or hotel. Its powers of revocation are limited to permits for sacramental wine (sec. 414) and importers' licenses (sec. 415). The sole power of revoking club, restaurant and hotel licenses is placed in the court of quarter sessions by Section 410.

In construing this section we must bear in mind what the Supreme Court said (Umholtz's License, 191 Pa. 177, 43 A. 75) in interpreting a statute along similar lines, providing for the licensing of the sale of alcoholic liquors, "It must also be understood that it is a law we are interpreting and not a contract between private parties. All legislation, especially that which regulates proceedings in the courts, is of a broader and more comprehensive scope, and is couched in more generic language than is employed in the drafting of private contracts, and requires an interpretation conformable to its general purpose. Thus statutes are to be so construed as best to effectuate the intention of the legislature, though such construction may seem contrary to the letter: Com. v. Fraim, 16 Pa. 163; Com. v. Monongahela Nav. Co., 66 Pa. 81"; and also keep in view the interpretation of the present statute which

Section 3 above quoted directs shall be used. Doing so, we are of opinion that the power of the court of quarter sessions to revoke such licenses is not limited to violations of liquor laws done or committed after the license is issued; it is also given power to revoke the license for violation of any "regulation of the Board relating to liquor, malt liquor or alcohol"; and we think that false swearing to a form of application for a license, prepared pursuant to statute and the regulations of the Board, in order that it may ascertain the fitness of the applicant to have a license and whether he is a "responsible person of good reputation," by means of which false swearing he fraudulently secures a license from the Board, is such a violation of a regulation of the Board as justifies the court of quarter sessions to revoke the license thus fraudulently obtained; that the license may be revoked for violation of a regulation of the Board, done or committed in securing the license as well as after the issuance of the license. We need not go so far as to hold that if the applicant had truthfully answered the questions in the application blank prepared by the Board and the Board, notwithstanding his record as to previous violations of the law, on full consideration, had seen fit to grant him a license, the court would have the authority to revoke it because of some previous infraction of the law which the Board had fully considered; but we do hold that when the licensee has obtained his license by false representations respecting his criminal record, or other material matter, such as his connection with the manufacture, etc. of liquors, and by reason of such false application has fraudulently obtained from the Board a license which it would not have granted if it had been in possession of the facts, the case falls within the 410th section of the Act and the court has power to revoke the license thus fraudulently obtained. The use of the word 'licensee'

in the section does not imply that the violation of the regulation must occur after the issuing of the license. It is only descriptive of the holder of the license and is the natural term to use. See Umholtz's License, supra, p. 180, where the expression 'party licensed' was construed.

Appellant's counsel admits that there should be some judicial forum with power to revoke the license thus fraudulently obtained from the Board, but suggests it is a court of equity rather than the court of quarter sessions. Considering the limited equitable jurisdiction which has been conferred by statute on our courts of common pleas, we are not at all certain that a court of equity would have jurisdiction to revoke a license granted by the Board. The act creating the system designates the court of quarter sessions as the authority to revoke such a license, and a liberal interpretation of its provisions, having in view the purposes of the act and the protection of the public welfare, health, peace and morals of the people, which it has in mind, justifies the court of quarter sessions in revoking a license which has been obtained by a wilful violation of a regulation of the Board made pursuant to statute and designed to carry its provisions into effect.

The question is not moot since the order appealed from renders appellant ineligible to have a license for five years from its date.

The assignments of error are overruled and the order of the court below is affirmed at the costs of the appellant.