Commonwealth *v.* Kosutic (et al., Appellant).

Argued March 11, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, PARKER, JAMES and RHODES, JJ.

*William S. Bailey,* of *Bailey & Rupp,* for appellant.

*Carl B. Shelley,* Assistant District Attorney, with him *Karl E. Richards,* District Attorney, for appellee.

OPINION BY CUNNINGHAM, J., April 27, 1936:

This appeal is by the surety upon the bond of a holder of a malt liquor retailer's license from an order of the court below adjudging the bond forfeited and directing that the full amount thereof be paid to the County of Dauphin. The license was granted by the treasurer of that county on May 25, 1934, under the provisions of the "Malt Liquor License Law" of May 3, 1933, P. L. 252, as amended by the Act of December 20, 1933, P. L. 75 (Special Session), to Catherine Kosutic for certain premises designated in the application as "903 South Front Street, 1st Ward, Steelton, Dauphin County" and more fully described therein as a "two and one-half (2½) story frame and brick building with 28 foot glass front on Front Street, the ground floor being a restaurant."

The appellant surety company executed the bond required by section 18 to accompany the application and to be filed with and retained by the treasurer. That section, so far as applicable to this case, provides that "All such bonds shall be conditioned for the faithful

observance of all the laws of this Commonwealth relating to the sale of beverages, or relating to the manufacture, sale or transportation of alcohol or any other alcoholic beverages. Such bonds shall be filed with and retained by the treasurer in the case of licenses issued to retailers and distributors ....... The penal sums of such bonds filed by a distributor or retailer shall be one thousand dollars for each place at which the licensee is authorized to sell beverages. ...... Every such bond shall be turned over to the district attorney, ...... to be sued out if, and when, the licensee's license shall have been revoked as herein provided."

On September 20, 1934, the licensee and two of her employees entered pleas of guilty in the Court of Quarter Sessions of Dauphin County, inter alia, to having violated section 23 of the Malt Liquor License Law, by selling malt liquors on Sunday, July 8, 1934. On October 8th of that year, the district attorney of Dauphin County, proceeding under section 13 of the statute, obtained a rule in the court below to show cause (a) why the license should not be suspended or revoked, and (b) why the bond of the licensee should not be forfeited and the penal sum thereof paid to the county. By direction of the court, copies of the petition and rule were served upon the licensee and her surety. The surety company moved to discharge the rule as to it and the licensee answered, in effect, that the violations, to which she had pleaded guilty and which formed the basis for the petition of the district attorney, did not occur on the "premises" for which the license was issued (903 South Front Street), but in her residence located at 905 of that street. The matter then came on for hearing before the court below, as contemplated by section 13, which prescribes, inter alia, that "Upon sufficient cause being shown or proof being made to the court that the licensee holding a license, ...... has ...... violated any of the laws of this Commonwealth

relating to the sale of malt liquors, or relating to the manufacture, sale or transportation of alcohol or other alcoholic beverages, it may, upon due notice and proper hearing being given to the person so licensed, suspend or revoke the said license issued by the treasurer. The court shall assess or remit the costs in its discretion. The action of the court in suspending or revoking a license shall be final."

At the hearing, the testimony of witnesses relative to a raid made by officers on the Sunday in question and to the arrest of the licensee and her employees was taken. By this testimony it was shown that the restaurant premises, No. 903, and the licensee's residence, No. 905, are adjoining properties on Front Street, which runs north and south, and that the buildings are separated merely by a four-foot passageway, extending toward the east. Each building has a side door, some twelve or fifteen feet back of Front Street, which doors open opposite to each other. There was testimony that when the officers entered No. 905 they found ten or twelve patrons seated at tables and drinking beer from mugs. There was no liquor in this building except in the mugs then in use, but in 903, across the narrow footway, beer was on tap with ice in the coils.

At the conclusion of the hearing, the court below revoked the license; overruled appellant's motion to discharge the rule for revocation; afforded it an opportunity to file an answer upon the merits within five days; and directed that its motion, "so far as the forfeiture of the bond is concerned," be placed on the argument list. Appellant did not avail itself of the permission to file an answer and, after argument, its motion was finally discharged and its bond adjudged forfeited.

The suggestion by appellant in its brief that it did not have its day in court on the merits of this case is without justification. It was accorded more than its

legal rights. Neither the bond nor the statute under which it was given contemplated that the surety should have notice of, or be made a party to, proceedings to suspend or revoke the license: Com. v. Eclipse Literary & Social Club et al., 117 Pa. Superior Ct. 339, 178 A. 341; Com. v. McMenamin et al., 122 Pa. Superior Ct. 91, 184 A. 679.

Appeals from orders revoking licenses and forfeiting bonds, or merely revoking licenses, have, as frequently remarked, the effect of a certiorari: Revocation of Mark's License, 115 Pa. Superior Ct. 256, 176 A. 254; Com. v. West Phila., Fidelio Mannerchor, ibid., 241, 176 A. 259; Com. v. McMenamin et al., supra. We have accordingly reviewed the record before us, including the evidence, for the purpose of ascertaining whether the order appealed from is supported by competent evidence. No question is raised with respect to jurisdiction. Upon such review, we are convinced there was evidence from which the court below could reasonably make the inference thus expressed by it: "We think we must look through the form to the substance in passing upon this controversy. There was no beer found in house No. 905 and there was beer on tap in house No. 903, the house in which Catherine Kosutic was authorized to sell malt liquor under her license. There was beer in the mugs, which beer was purchased by one witness, and there was also beer in the mugs of other persons in No. 905. From where did it come? Why did Catherine Kosutic have ice in the ice box about the beer coils in No. 903 on the Sabbath Day? Why did beer come from the tap when the officers opened it in No. 903? We are forced to the conclusion that the beer which was purchased in No. 905 that Sunday afternoon came from No. 903, and this was a mere subterfuge on the part of the licensee, Catherine Kosutic, to evade the statutory provisions of the law."

We agree with counsel for appellant that the Com-

monwealth, in order to sustain this forfeiture, had the burden of showing violations of the liquor laws at the "premises" upon which, in the language of the statute, "the privileges of the license [were] to be exercised." The Malt Liquor License Law requires a detailed description of the place for which the license is desired, and that a separate license be secured, and a separate bond given, for each place where malt liquors are sold. It is recited in the bond itself that it was given by reason of the desire of the principal to obtain a retailer's license at "903 S. Front Street, 1st ward, Borough of Steelton," etc. In view of the language of the bond and the provisions of the statute by which it was required and under which it was executed and delivered, we think it related, and should be considered as applying, to the premises described in the application. By it appellant undertook to guarantee that there should be no violation at these premises of the "laws of this commonwealth relating to the sale of beverages" or of the "laws relating to the manufacture, sale, or transportation of alcohol or of any other alcoholic beverages." Sufficient cause for revocation of a license may occur either on the premises or elsewhere, but, in our opinion, a bond of this character can be forfeited only for violations of the liquor laws occurring at the licensed premises.

Granting the soundness of the proposition of law thus advanced in behalf of appellant, it does not follow that it has any application to the facts appearing from the evidence in this case. There was ample and uncontradicted evidence of sales of beer in such immediate connection with the restaurant premises for which the license was granted that it would be a travesty to say that sales thus made were not intended to be included under the "condition" of appellant's obligation.

It is quite true, as argued by appellant, that forfeiture of the bond does not automatically follow from

the revocation of a license: Revocation of Mark's License, supra, (upon the ground that the licensee was not the only person pecuniarily interested in the business) and Revocation of Wolf's License, 115 Pa. Superior Ct. 514, 176 A. 260, which had been obtained by false representations in the application. In Mark's case, the ground for the revocation was not a violation of our liquor laws and in Wolf's the causes for revocation did not arise during the term of the license. Here, however, appellant agreed in its bond that upon violation of the liquor laws "and upon the revocation of the license aforesaid for any such violation during the continuance of said license the full amount of this bond shall be due and payable."

It follows from what has been said that neither of the assignments of error can be sustained.

Order affirmed.