## Samson's Appeal

Argued October 12, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADT-
FELD, PARKER, JAMES and RHODES, JJ.

*J. George Lipsius,* for appellant.

*Thomas I. Guerin,* Special Deputy Attorney General,
with him *Charles J. Margiotti,* Attorney General, for
appellee.

OPINION BY STADTFELD, J., November 19, 1936:

On April 2, 1936, a petition was filed on behalf of the
Attorney General of the Commonwealth of Pennsyl-
vania, to revoke the restaurant liquor license issued
to Rose Samson, the appellant, trading as Bridgeway
Cafe, for premises 303 North Sixth Street, Philadel-
phia, on the ground that the licensee was not the real,
bona fide proprietor of the licensed premises and that
the real owner thereof was Oscar Wolf, who formerly

held a liquor license for the same place, which was revoked by the Court of Quarter Sessions.

An answer to the petition to revoke was filed and a hearing thereon was held before SMITH, P. J. An opinion was filed by the court sustaining the Commonwealth's case and ordering the revocation of the respondent's license. From this order, the respondent filed an appeal and obtained a supersedeas.

The sole question on this appeal is whether there was sufficient, competent, legal evidence to warrant the court, in the exercise of its proper legal discretion, to revoke the license of the respondent, the appellant herein.

The petition for revocation of the license alleged that the license had been obtained through fraud and misrepresentation in the application therefor, that the licensee was not the only person interested in the licensed business, and that one Oscar Wolf was the actual and real proprietor and manager of said business and the recipient of the powers, privileges and profits accruing from such license.

An answer was filed to the petition, denying any interest of Oscar Wolf in the licensed business and averring that the licensee was the sole recipient of the benefits conferred by the license.

At hearing thereon, on April 17, 1936, evidence was presented by the petitioner as follows: A liquor license was issued to Oscar Wolf for these premises for the year 1934, which license was revoked the same year by the Court of Quarter Sessions of Philadelphia County because of misrepresentations made by Wolf in his application therefor as to his previous arrests for law violations. On appeal to our court, the order of the lower court was affirmed: 115 Pa. Superior Ct. 514, 176 A. 260. 1935 and 1936 licenses for the same premises were issued to Rose Sam-

son, who represented herself as the sole owner and proprietor thereof.

Enforcement Officer Owens of the Pennsylvania Liquor Control Board visited the licensed premises on November 27, 1935; the licensee's husband, Harry Samson, was tending bar, and Oscar Wolf was sitting in the rear; the licensee was not on the premises; Samson stated that he did not know who Wolf was but Wolf's wife, who was also present, admitted their identity and stated that she and her husband had living quarters on the second and third floors of the building; in a drawer behind the bar Owens found Wolf's check-book which bore a stub indicating a withdrawal of $500 on October 14, 1935, when renewal liquor license fees were paid to the board; Owens then visited the bank where Wolf had his account and ascertained that such withdrawal had actually been made, and that Wolf had made deposits totaling over $800 in November, 1935.

Enforcement Officer Garreau visited the licensed premises on April 6, 1936; Wolf was then sitting at one end of the bar, but refused to disclose his identity; Garreau then conversed with Harry Samson about purchasing the business, and Samson told him that he was not the owner but only worked for his father-in-law, Wolf; Garreau returned the following day and Samson then told him that his father-in-law would not sell.

Enforcement Officer McGarry visited the establishment on April 7, 1936, at which time Wolf was behind the bar; McGarry asked for Mrs. Samson, and Harry Samson and Mrs. Samson appeared; McGarry returned on April 16, 1936 and found Mrs. Wolf behind the bar, making sales.

Oscar Wolf was called by the petitioner to produce all his books of account, cash books, checkbooks, check stubs, etc. for the period January 1, 1934, to the date of hearing; he produced checkbook with many stubs missing; he testified that he drew a $500 check dated Octo-

**114**

ber 14, 1935, (for which no stub could be found) to the order of cash, which he denied having used in payment of Mrs. Samson's 1936 liquor license, first stating that he had withdrawn this sum from the "Walnut Bank" and had put it in "this" bank (Northern Trust Company, upon which check was drawn), and later claiming to have spent it for repairs to the licensed premises.

The respondent licensee testified that she had applied for her first license in January, 1935, borrowing $700 from Wolf to cover license and filing fees and bond premium; that she has no bank account, having started with nothing; that she also borrowed $500 from Wolf for her 1936 license; and that her husband had been Wolf's bartender prior to the revocation of his license. Other witnesses, beer and whiskey salesmen, were called by the licensee, who testified as to business transactions with the licensee and her husband.

The reenacted and amended Liquor Control Act of July 18, 1935, P. L. 1246, contains the following provision in section 410: "...... In the event the person whose license was suspended or revoked by the court shall feel aggrieved by the action of the court of quarter sessions, he shall have the right to appeal to the Superior Court. The Superior Court shall examine the record upon which such appeal is based and shall determine whether or not the action of the court of quarter sessions was properly based upon the evidence. The action of the Superior Court shall be final ......"

The 1935 amendment was simply a legislative affirmance of a right established by judicial decision. It did not enlarge the nature of the appellate review theretofore existing, nor was it intended to substitute findings of fact by the appellate court for those of the court below in weighing and determining conflicting evidence.

Quoting from the opinion of the lower court; "Examination of the testimony taken in this case together

with the record of revocation of the prior license clearly indicates that Oscar Wolf, the real operator of the restaurant with the liquor license, is attempting to conduct his business in the name of his stepdaughter, Rose Sampson. ...... The place is run just as it was before the revocation of the Wolf license."

As stated by our Brother CUNNINGHAM in *Revocation of Marchesani's License,* 122 Pa. Superior Ct. 521, 524: "The presiding judge ...... who saw and heard the witnesses, drew the inference from all the circumstances disclosed by the evidence that the license 'was obtained as the result of fraud and misrepresentation in the application therefor as to the actual ownership, management and control' of the premises."

. Upon a review of this record, we find therein, competent, legal evidence supporting the conclusions of the court below; its weight and the credibility of the witnesses were for that tribunal and not for our independent judgment.

Order affirmed at appellant's costs.