DeLucca's Liquor License Case.

Argued October 21, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADT-
FELD, PARKER, JAMES and RHODES, JJ.

*H. Rook Goshorn,* for appellant.

*Thomas I. Guerin,* Special Deputy Attorney General,
with him *Charles J. Margiotti,* Attorney General, for
appellee.

OPINION BY CUNNINGHAM, J., January 29, 1937:
This appeal is by the surety upon the bond of a holder

of a restaurant license, issued under the "Pennsylvania Liquor Control Act," from an order of the quarter sessions revoking the license and forfeiting the bond.

On January 17, 1935, the Pennsylvania Liquor Control Board issued a restaurant liquor license for the year 1935 to Joseph DeLucca, trading as "Stenton Grill," upon the premises at No. 217 South 40th Street, Philadelphia. It was issued under the provisions of section 401 of the Pennsylvania Liquor Control Act of November 29, 1933, P. L. 15, (Special Session), and Continental Casualty Company, appellant herein, became the surety upon the bond of the licensee required by section 406.

On July 16, 1935, the Attorney General instituted proceedings in the court below, under section 410, for the revocation of the license upon the ground that the licensee had violated a law of this Commonwealth relating to liquor (section 411) by selling it upon certain Sundays—February 24, March 3, and March 17, 1935. Endorsed upon the petition for revocation was a notice to DeLucca that a hearing thereon would be held on August 16, 1935. Attached to the petition was an affidavit, dated August 8, 1935, purporting to be a return of service. It was made by one of the enforcement officers of the Pennsylvania Liquor Control Board and read:

"Walter R. Diem, being duly sworn according to law, deposes and says that he served *Joseph DeLucca,* holder of restaurant liquor license No. R-763, with a copy of the petition for revocation of said liquor license, with notice of time and place of hearing endorsed thereon, by handing a true and correct copy of said petition to *M. R. Brogan,* manager in charge of bonds at Continental Casualty Company, 424 Walnut Street, Philadelphia, on August 6, 1935, at 2:30 P. M., D. S. T., and did then and there make known to her the contents thereof." (Italics supplied)

When the proceeding was called for hearing on August 16th, Thomas I. Guerin, Esq., special deputy attorney general, appeared for the Commonwealth. DeLucca was neither present nor represented by counsel. In opening, Mr. Guerin stated, in substance, that it was discovered that the licensed premises had been closed, and when the officers attempted to make service there they found nobody upon whom service might be made; that they went to the address given in the application as the residence of the licensee and were informed that he had moved therefrom; and that they then made service on August 6, 1935, upon the Continental Casualty Company, 424 Walnut Street. Thereupon, the presiding judge, KUN, J., proceeded ex parte and at the conclusion of the testimony entered the following decree:

"And Now, to wit: this 16th day of August, 1935, upon petition of Charles J. Margiotti, Attorney General of the Commonwealth of Pennsylvania, and after due notice and hearing thereon, it appearing to the court that one Joseph DeLucca, trading as Stenton Grill, holder of restaurant liquor license No. R-763 for the license year 1935, has violated the provisions of the Act of Assembly of November 29, 1933, P. L. 15, as reenacted and amended the 18th day of July, 1935, and the rules and regulations of the Pennsylvania Liquor Control Board relating to alcoholic and malt beverages, it is ordered, adjudged and decreed that restaurant liquor license No. R-763, issued to the said Joseph DeLucca, be and the same is hereby revoked, *and the bond filed with the application for such license is hereby forfeited.* It is further ordered and directed that the said Joseph DeLucca shall pay the costs of this proceeding." (Italics supplied)

On September 30, 1935, counsel for the appellant surety company entered his appearance, de bene esse, and presented its petition to strike off the decree. After

504

reciting the proceedings up to the time of entering the decree, appellant averred that the same "was, improperly entered in that notice of the application for said decree and the hearing thereon was not given to Joseph DeLucca, or served upon him, as provided by law." The purported return of service above set out was quoted and the petition concluded with the prayer that the decree "be stricken off." Upon presentation of this petition a rule was granted upon the Attorney General to show cause, etc. The material averments in the answer filed in behalf of the Attorney General follow:·

"Respondent further avers that said Joseph De-Lucca, in applying for said liquor license, stated in his application therefor that he resided at 3727 Spruce Street, Philadelphia, and that the licensed premises were located at 217 S. 40th Street, Philadelphia; respondent further avers that endeavor was made to serve the said Joseph DeLucca personally with notice of said hearing, but the said Joseph DeLucca had closed, abandoned and left the licensed premises, and had removed from the residence address set forth in his application for license; respondent further avers that it has been advised that the said Joseph DeLucca has left the jurisdiction of this court, and has moved to Atlantic City, New Jersey, in consequence of which removal and abandonment, and despite diligent endeavor on the part of one Walter R. Diem, Enforcement, Officer, to effect personal service thereof upon the said licensee, such personal service could not be had; wherefore, the licensee having removed himself, as set forth above, the said Walter R. Diem made service of said copy of petition for revocation of liquor license and of written notice of time and place of hearing thereon upon M. R. Brogan, manager in charge of bonds of the Continental Casualty Company, 424 Walnut Street, Philadelphia, on August 6, 1935. ......·

"The petitioner herein, Continental Casualty Company, as surety for licensee, has no right or interest to intervene in said revocation proceeding."

The sufficiency of the evidence to support a finding that sales of liquor were repeatedly made on Sunday by the licensee was not questioned by appellant.

After argument upon the petition, rule, and answer, the court below, under date of November 7, 1935, and in an opinion by PARRY, J., discharged the rule and dismissed the petition, saying: "The Continental Casualty Company is not a party in the revocation proceedings. It has never intervened or asked leave to intervene and although it has a collateral interest is not directly concerned. It appears to us that the petitioner has no standing to challenge the validity of the order revoking the license of Joseph DeLucca and the petition is therefore dismissed."

In support of this appeal counsel for appellant has assigned for error the decree of August 16, 1935, revoking the license and forfeiting the bond, and the above order dismissing appellant's petition to strike off that decree.

We also have before us a motion to quash the appeal upon the ground that the surety has no standing to question the legality of the decree of revocation and forfeiture and, consequently, no right to appeal from the action of the court below. In this connection it may be noted that appellant made no formal application for leave to intervene.

Prior to the hearing in this case the Act of 1933, supra, was reenacted and amended by the Act of July 18, 1935, P. L. 1246, and counsel upon both sides treat the procedural provisions of the latter act as applicable to this case.

The bond here in question was in the amount of $2,000, payable to the Commonwealth. The condition reads: "Now therefore, the condition of this obliga-

tion is such that if upon and after the issuance of such license the above bounden principal shall fully and faithfully observe the provisions of all the laws of this Commonwealth and the rules and regulations promulgated by the Pennsylvania Liquor Control Board relating to liquors and malt liquors, then this obligation shall be void; otherwise it shall remain in full force, virtue and effect." Two additional paragraphs were included: the first to the effect that upon violation of any liquor law or regulation promulgated by the board relating to liquors, "and upon the revocation of the license aforesaid for any such violation during the continuance of said license the full amount of this bond shall be due and payable"; and the second being a warrant of attorney for the confession of judgment. By section 406 of the amendatory act it is provided that, "Every such bond shall be turned over to the Department of Justice to be collected, if, and when, the licensee's license shall have been revoked and his bond forfeited, as provided in this act."

The revocation or suspension of licenses, as well as the forfeiture of bonds, is authorized and controlled by section 410, the applicable provisions of which are that, upon sufficient cause being shown, or proof being made that a licensee has violated any of the laws of the Commonwealth relating to liquors, the court of quarter sessions "may, upon *due notice* and proper hearing being given to the person so licensed and complained against, suspend or revoke the license issued under the provisions of this act. When a license is revoked, the licensee's bond *may* be forfeited." (Italics supplied) It is further provided: "In the event the person whose license was suspended or revoked by the court shall feel aggrieved by the action of the court of quarter sessions, he shall have the right to appeal to the Superior Court."

We have held these bonds are penalty and not in-

demnifying obligations, and that neither the bonds nor the legislation by which they are required contemplate that the surety shall have notice of, or be a party to, proceedings to suspend or revoke a license: *Com. v. Eclipse Literary and Social Club et al.,* 117 Pa. Superior Ct. 339, 178 A. 341; *Com. v. McMenamin et al.,* 122 Pa. Superior Ct. 91, 94, 184 A. 679. In the latter case it was also held that an unappealed from order of revocation entered against a licensee is conclusive against his surety. This holding, of course, presupposes a *valid* order of revocation.

The question with which we are confronted in this appeal is not whether the Commonwealth may bring an action upon one of these bonds and, upon proof of a breach of its condition, obtain a verdict for the penalty, but whether, under this record, the court below could legally enter a decree forfeiting the bond and thereby empower the Commonwealth to *confess judgment* in Dauphin County against the surety. In *Com. v. McMenamin,* supra, which involved the question of the right of the surety to have a judgment so confessed opened, it was held that as the decree of revocation in that case had been entered after legal notice to, and a proper hearing against, the licensee and had not been appealed from by him, the rule obtained by the surety to open the judgment was properly discharged.

Forfeiture of the bond does not automatically follow from the revocation of a license, as was illustrated in *Revocation of Mark's License,* 115 Pa. Superior Ct. 256, 176 A. 254, (where the licensee was not the only person pecuniarily interested in the business) and *Revocation of Wolf's License,* 115 Pa. Superior Ct. 514, 176 A. 260,—where the license had been obtained by false representations in the application. In the first of these cases the ground for the revocation was not a violation of our liquor laws and in the latter it did not arise during the term of the license.

There are some technical difficulties upon each side of this case, but we think it may be disposed of, upon its merits and under established and general principles of law, without doing violence to the legislative intent disclosed in our present liquor control statutes.

The Attorney General's petition did not pray for the forfeiture of the bond, but as the Act of 1935 expressly provides that, when a license is revoked, "the licensee's bond may be forfeited," we pass the question whether the decree is properly supported by the petition.

The outstanding and fundamental defect, appearing upon the face of this record, is that the presiding judge in the court below proceeded to a hearing and adjudication of the charges contained in the petition for revocation without any appearance by, or on behalf of, the licensee and without proof of service upon him of a copy of the petition or of notice of any kind to him of the time and place of hearing. That notice (of the character contemplated by the statute) be given the licensee of the time and place of hearing, as a prerequisite to the exercising by the quarter sessions of the jurisdiction conferred upon it, is required not only by the act but also by the most elemental principles of judicial procedure. "Due notice" and a "proper hearing" are the foundations prescribed by the legislature for a decree of revocation. The essentials of a "proper hearing" were considered in *Com. v. McMenamin*, supra. We are not here concerned with a technical definition of what would constitute "due" notice under the statute, but are dealing with a case in which no notice of any kind was served upon the licensee—a case in which there is not a shred of evidence that he had any "knowledge" of the fact that proceedings had been instituted against him and that he would have an opportunity to defend himself at a specified time and place. For the purposes of this case, we may say that "due notice" means, at least, that the licensee

must be informed that he has been charged with specific violations of the liquor laws, or of the regulations of the Pennsylvania Liquor Control Board, and will be given a hearing at a designated time and place, and such notice must be given a sufficient length of time prior to the hearing to afford him a reasonable opportunity to prepare to meet the charges.

None of these purposes would be accomplished by serving the notice upon the surety, as was done in this case. Under the circumstances disclosed by this record, that was merely a vain and useless gesture. Under all the authorities, notification, in a manner reasonably calculated to give a party knowledge of a proposed exercise of jurisdiction, and an opportunity to be heard are essential requisites of due process of law in judicial proceedings. As this decree of revocation was entered without such notification to the licensee, it was a nullity.

The other branch of the case—relating to the right of the surety to petition that the decree be stricken off and to appeal from the refusal of the quarter sessions to grant its petition—is not so clear. As stated, we have held that the existing legislation upon the subject does not contemplate that the surety shall have notice of, or be a party to, proceedings to suspend or revoke a license. As a general rule, one seeking to intervene in any proceeding is required to make application for leave so to do, and, usually, before judgment. Unless the petition to strike off the decree be treated as one to intervene, there was no application for intervention in this proceeding.

But as the legislation with which we are dealing is comparatively new, we are not disposed to enforce technical rules of procedure when to do so would work a manifest injustice. It is to be observed that the forfeiture of the surety's bond is not an integral part of a decree of revocation; it is merely an incident thereto

which, as above illustrated by decided cases, may or may not follow from a decree of revocation—depending upon the grounds for the revocation. The language of the statute is that when the license is revoked the court "may" forfeit the bond.

We here have a decree of forfeiture appended to a decree of revocation which we hold was null and void for want of jurisdiction to pronounce it. The order of forfeiture is therefore left without anything to support it. If this appeal is quashed appellant would be in the position of having a final judgment confessed against it in Dauphin County as a result flowing from a void decree. Indeed, we learn from the answer to the rule to quash that the Department of Justice, relying upon the "order of revocation," has already entered the judgment and intends to proceed to execution, "unless the order is modified or reversed."

It is true, as pointed out by counsel for appellee, that the statute gives an express right of appeal only to "the person whose license was suspended or revoked," but the companion "Beverage License Law" of July 18, 1935, P. L. 1217 §13(c), gives that right to "any person aggrieved by the action of the court of quarter sessions."

If we had found the decree of revocation *valid,* we would quash this appeal by the surety, but, under the circumstances to which we have referred, we have concluded to deny the motion to quash, and reverse the decree without prejudice to whatever rights the Commonwealth may have in a suit for a breach of the primary condition of the bond.

The only reference in the bond to a decree of revocation is in a separate paragraph following its general condition and immediately preceding the warrant of attorney.

One of the undertakings of the surety, as set forth in its bond, is that if a decree of revocation is entered

against the licensee judgment may forthwith be confessed for the penalty without any further proof that the conditions of the bond have been breached, but in the absence of such decree, the Commonwealth may have the right to show, by the production of a record of conviction, or other competent proof, that the licensee has not faithfully observed our liquor laws or the rules and regulations of the board. We, however, express no definite conclusion upon that question at this time because it is not directly involved in this case.

The decree of August 16, 1935, is reversed without prejudice to any rights the Commonwealth may have to bring suit upon the bond.