## Commonwealth v. Burke et al.

448

*Metzger & Wickersham*, for petitioner.

*Horace A. Segelbaum*, Special Deputy Attorney General, and *Guy K. Bard*, Attorney General, for respondents.

RICHARDS, P. J., specially presiding, November 10, 1938.—On June 4, 1937, Charles D. Burke applied to the Treasurer of Mifflin County for a retail dispenser's license. He filed with his application a bond in the sum of $1,000, dated June 1, 1937, executed by him as principal and by the Continental Casualty Company as surety.

A license was granted to him which was to expire May 31, 1938. On February 8, 1938, the Liquor Control Board issued a citation to Burke, requiring him to show cause why his license should not be revoked and the bond forfeited. On February 19th, the board sent to him by registered mail a letter, dated February 18th, notifying him of the hearing on the citation. This hearing was held on March 1st, at which time he did not appear. The record indicates that he did not receive the letter until March 5th, the delay in delivery being unexplained, and on March 16th, the board took action revoking his license and forfeiting the bond. On May 20th, judgment was confessed on the bond in this court. On July 15th, the surety presented a petition to open the judgment for the reasons hereinafter discussed, and on July 20th, the Attorney General moved to dismiss said petition. On September 14th, an agreement of counsel was filed raising additional questions of law.

There seems to be no dispute as to the facts in the case, but several questions of law are involved which the court must consider.

1. Is section 13 of the Beverage License Law of June 16, 1937, P. L. 1827, constitutional insofar as it provides for giving notice of a revocation proceeding to the licensee by registered mail addressed to him at his licensed premises?

The Beverage License Law of July 18, 1935, P. L. 1217, provided, in section 13, that licenses might be revoked by the court "upon due notice and proper hearing being given to the person so licensed". Since no method of giving notice was prescribed, personal notice was required. Inability to give such notice made revocation impossible. To remedy this situation the Beverage License Law of 1937 was passed providing that notice be given to the licensee at the licensed premises by registered mail.

There are many laws of this Commonwealth which provide that notice be given by registered mail. We may mention specifically the following: Public Utility Law of May 28, 1937, P. L. 1053, sec. 1002; Pennsylvania Labor Relations Act of June 1, 1937, P. L. 1168, sec. 10(e); Milk Control Law of April 28, 1937, P. L. 417, sec. 405; Orphans' Court Act of June 7, 1917, P. L. 363, sec. 12(a); Negotiable Instruments Law of May 16, 1901, P. L. 194, sec. 105. Others could be mentioned.

It has been definitely held by our appellate courts that a method of giving notice may be adopted which is reasonably likely to inform the party involved of the proposed action.

"Under all the authorities, notification, in a manner reasonably calculated to give a party knowledge of a proposed exercise of jurisdiction, and an opportunity to be heard are essential requisites of due process of law in judicial proceedings": DeLucca's Liquor License Case, 124 Pa. Superior Ct. 500, 509.

"When the State legislature prescribes a reasonable method of service, it is as to persons resident herein and those seeking relief in our courts due process": Nixon v. Nixon, 329 Pa. 256, 266.

It has been held that notice of dishonor of a negotiable instrument given by mail is sufficient.

". . . since the Act of May 16, 1901, P. L. 194, section 105, 'Where notice of dishonor is duly addressed and deposited in the post office, the sender is deemed to have given due notice, notwithstanding any miscarriage in the mails.' 'Under this section, due notice of dishonor is deemed to have been given when it is shown that the notice is properly addressed and deposited in the post office, whether it has been received or not': First Nat. Bk. of Hanover v. Delone, 254 Pa. 409, 412": Bittenbender Co. v. Bergen, 277 Pa. 27, 30.

We feel that notice by registered mail is reasonably designed to inform the party involved of the proposed action and that it is due process. We can see no reason to set aside such a method which has been sanctioned by many other laws and has been accepted for many years. We conclude that the act is not unconstitutional in providing that notice be given by registered mail.

2. How is time to be computed with reference to notice of revocation?

Section 13 of the Beverage License Law of 1937 provides as follows: . . .

"the board may . . . cite such licensee to appear before it or its examiner, not less than ten nor more than fifteen days from the date of sending such licensee, by registered mail, a notice, addressed to him at his licensed premises, to show cause why such license should not be suspended or revoked."

In the instant case the hearing was held March 1, 1938, and notice thereof was mailed to the licensee on February 19, 1938. The question is: Was this notice given not less than ten days from the date of hearing?

We have been referred to Gregg's Estate, 213 Pa. 260, as authority for excluding both terminal days. However, this case relates to charitable bequests which were void unless made "at least one calendar month before death."

The opinion in this case states that it was unnecessary to consider the Act of June 20, 1883, P. L. 136. We feel, however, that this case is not authority in the present instance.

The Act of 1883, supra, provided that in computing time the first day should be excluded and the last included. It has been held that this method of computing time applies to the law of mechanics' liens: Herr v. Moss Cigar Co., 237 Pa. 232. To the same effect is the case of Rich v. Boguszinsky, 88 Pa. Superior Ct. 586. In this case the court, in an opinion written by Judge Cunningham, not only showed that in computing the time for filing mechanics' liens the Act of 1883 applied, but it distinguished this construction from that used in the Gregg case. The mechanics' lien law provides that, before a mechanic's lien can be filed by a subcontractor, notice must be filed and that "such notice must be served at least one month before the claim is filed." It was held that a lien entered on November 19, 1923, after notice given on October 19, 1923, was proper. In reaching this conclusion it quoted the Act of 1883. Here the court excluded the first day and counted the last. If this is a compliance with the statutory requirement that notice must be served at least one month before the claim is filed, we feel that the same theory of computation should be used where the statute requires that hearing be held not less than ten days from the date of sending notice.

It will be observed that the Statutory Construction Act of May 28, 1937, P. L. 1019, which was enacted and was effective prior to the institution of the revocation proceedings in the instant case, provides for the computation of time. Section 38 of said act reads as follows:

"When any period of time is referred to in any law, such period in all cases . . . shall be so computed as to exclude the first and include the last day of such period."

Since this is a very recent enactment of the legislature relating to statutory construction, and applies to "any

law," we feel that it is obligatory upon the court to apply it to the instant case.

We conclude, therefore, in computing time under section 13 of the Beverage License Law, the first day is to be excluded and the final day included. It follows that the notice in the present instance was given within the ten-day period.

3. Did Burke have notice of the hearing to revoke his license?

If we are correct in the foregoing, he must be deemed to have had such notice as the law requires. If notice of dishonor of a negotiable instrument is effective when mailed, although not received, the same result should follow here. See Bittenbender Co. v. Bergen, supra. We believe that such construction gives effect to the intention of the legislature and overcomes the difficulty or impossibility, in some cases, of giving personal notice.

Burke actually received the notice on March 5th. While the hearing was on March 1st, his license was not revoked until March 16th. He did not ask for a rehearing or take an appeal. Had he been aggrieved, both courses were open to him. His acceptance of the revocation, without protest, is indicative of his acquiescence and leads to a strong inference that the revocation was justifiable. As was said in Commonwealth v. McMenamin et al., 122 Pa. Superior Ct. 91, 100, an order of revocation unappealed from is conclusive, on both the licensee and on the surety.

We do not think that DeLucca's Liquor License Case, supra, is controlling. When that decision was made there was no provision in the law for giving notice by mail. Personal notice was required and was not given. Notice to the surety was held insufficient. There the court held that the licensee must have "knowledge" of the revocation proceedings and "must be informed" thereof. We feel that these two things are synonymous and that he was informed by registered mail. Should we interpret the requirement to be actual knowledge, the delivery of the let-

ter at the licensed premises would not be enough without further proof that the licensee read the letter or was informed as to the contents thereof. This, it would seem, would be abortive of the intention of the legislature. The refusal to receive a letter would produce the same result. We conclude, therefore, that Burke had such notice as the law requires.

4. Is section 13 of the act unconstitutional because it does not require that notice of the hearing to revoke a license be given to the surety?

There is no provision in the law or in the bond which requires such notice to be given to the surety. This matter has already been decided by our appellate courts.

". . . neither the bonds nor the legislation by which they are required contemplate that the surety shall have notice of or be a party to proceedings to suspend or revoke a license": Commonwealth v. McMenamin et al., supra. See also Commonwealth v. Kosutic et al., 122 Pa. Superior Ct. 104, 108, and cases therein cited.

Further discussion is unnecessary and we hold the act is not unconstitutional for this reason.

5. Was the order of forfeiture improper because made as provided in the Act of 1937 instead of the Act of 1935?

The license issued to Burke was issued under the Beverage License Law of 1935. Under this law, procedure to revoke his license would have been before the court. Under the Pennsylvania Liquor Control Act of June 16, 1937, P. L. 1762, the procedure to revoke is initiated before the board with the right to appeal to the court. In both cases, forfeiture of the bond followed the revocation of the license. This is purely a change in procedure which does not affect any substantive right. It is effective prospectively and retrospectively. As was said by Chief Justice Moschzisker, speaking for the Supreme Court:

"Since the statute deals with procedure alone, and affects no substantive rights, it applies to all cases within

its purview, whether arising prior to its enactment or thereafter": Cleary v. Quaker City Cab Co. et al., 285 Pa. 241, 246.

See also, to same effect, Kille v. Reading Iron Works, 134 Pa. 225, 227, Vinnacombe et ux. v. Philadelphia et al., 297 Pa. 564, 570, and Myers v. Lohr, 72 Pa. Superior Ct. 472, 476, 477.

There is nothing in the Constitution giving the licensee the right to have a revocation proceeding heard by the court in the first instance. This right arose by statutory enactment. The legislature having given that right may take it away and vest it in another tribunal: Premier Cereal & Beverage Co. v. Pennsylvania Alcohol Permit Board et al., 292 Pa. 127, 133.

We conclude that the order forfeiting the bond, following revocation of the license, was not improper because made under the Act of 1937, instead of the Act of 1935.

6. Does the forfeiture of the bond deprive the surety of its property without due process of law?

What we have above stated about change in procedure (paragraph 5), and due process (paragraph 1), disposes of this question. Since a change in procedure involves no constitutional right and since the notice of revocation given by mail meets the requirements of due process, the surety is not injured. It is not entitled to notice of a hearing to revoke. See paragraph 4. Consequently, there is no merit in this contention.

7. Does the application of the Act of 1937 to this case impair the obligation of the contract of the surety? The bond provides as follows:

" . . . the condition of this obligation is such that if upon and after the issue of such license the above bounden principal shall fully and faithfully observe the provisions of all the laws of this Commonwealth relating to the sale of beverages and all laws relating to the manufacture, sale, or transportation of alcohol or of any other alcholic

beverages, then this obligation shall be void; otherwise it shall remain in full force, virtue and effect."

"And the obligors . . . do agree with the Commonwealth of Pennsylvania that upon violation of the said Act No. 398, approved July 18, 1935, known as The Beverage License Law or of any laws of this Commonwealth and the rules and regulations promulgated by the Pennsylvania Liquor Control Board relating to the sale of beverages or relating to the manufacture, sale or transportation of alcohol or alcoholic beverages and upon the revocation of the license aforesaid for any such violation during the continuance of said license, the full amount of this bond shall be due and payable."

It will be noticed that the bond not only covers violations of the Act of 1935, but violation "of any laws of this Commonwealth," and violation of "the rules and regulations promulgated by the" board, relating to the sale of beverages. It is hard to see how the Act of 1937 impairs the obligations of this contract.

The Act of 1937 reënacts the Act of 1935. The sale of beer to minors is prohibited by both acts. This is one of the reasons for the revocation given by the board. In this respect the surety is not subjected to any different liability than it was by the Act of 1935.

" . . . when an act expressly repeals a former one and at the same time reënacts its exact provisions the intent is manifest that there shall be no change in the law": Haspel v. O'Brien, 218 Pa. 146, 149. See also Commonwealth v. McNamara, 93 Pa. Superior Ct. 267, 272.

How, then, is the obligation of its contract affected? A different problem might be presented had the Act of 1937 imposed a greater liability than the Act of 1935. Even then it might be argued that the bond covered violations of "any law" in effect during the period covered by the license. We cannot see how the contract of the surety is impaired.

And now, to wit, November 10, 1938, the motion of the Attorney General to dismiss the petition of the Conti-

nental Casualty Company to open judgment entered on the bond executed by it and by Charles D. Burke is hereby allowed and said petition is hereby dismissed, costs to be paid by the Continental Casualty Company.