## JACOBSON v. BELPLAZA CORPORATION et al.

Civ. 38-283.

United States District Court
S. D. New York.

May 27, 1948.

Judgment Affirmed Feb. 4, 1949.

Bigham, Englar, Jones & Houston, of New York City (John M. Aherne and John

L. Conners, both of New York City, of counsel), for plaintiff.

Curtis & Eberlein of New York City (Albert R. Eberlein, of New York City, of counsel), for defendant Belplaza Corporation.

Harold B. Epp, of New York City (Allen M. Taylor, of New York City, of counsel), for Richards & Hassen Enterprises, Inc.

COXE, District Judge.

This is an action to recover the value of a mink coat which was misdelivered. The defendants are the Belplaza Corporation (hereinafter referred to as the "Hotel"), which owned and operated the Belmont Plaza Hotel and the Glass Hat Restaurant in connection therewith, and Richards & Hassen Enterprises, Inc. (hereinafter referred to as the "Concessionaire"), which operated the check room in the restaurant, under a written agreement with the Hotel. The coat was delivered to an imposter without production of the check therefor.

The Hotel occupied the block front on the easterly side of Lexington Avenue between 49th and 50th Streets in the City of New York, the entrance thereto being on Lexington Avenue near 49th Street. The Glass Hat Restaurant was on the ground floor with an entrance from 50th Street and also one from the hotel lobby. Just inside the latter entrance there was a bar which was partitioned off from the restaurant by a wooden partition about four and one-half feet high.

On October 1, 1945, the Hotel and the Concessionaire entered into a written agreement whereby the Hotel granted, and the Concessionaire hired, for the period of two years, the exclusive privilege of carrying on a checking service for the checking of wearing apparel of guests or others in connection with the public restaurants and private banquet rooms in the Hotel, including the Glass Hat, and whereby the Concessionaire also agreed to hold the Hotel harmless from, and to indemnify it against, all claims of any kind or nature made by any person against the Hotel for loss of any wearing apparel checked with, or left in custody of, the Concessionaire, or its agents or employees. The fact that the Hotel did not operate the check room in the Glass Hat Restaurant was not made known to its patrons and guests.

Shortly before 8:00 p. m. on the evening of February 16, 1946, plaintiff and her husband, accompanied by Mr. and Mrs. Rosenberg, entered the Glass Hat Restaurant through the 50th Street entrance. Plaintiff was wearing a mink coat which she owned. After they had been seated at a table, one "Joe", a waiter or captain of waiters employed by the Hotel, suggested that they would be more comfortable if they would permit him to check their coats. Plaintiff accordingly handed him her mink coat and Mrs. Rosenberg handed him her black Persian Lamb coat. "Joe" took them to the check room at the 50th Street entrance and delivered them to Jane Powers, the check room attendant employed there by the Concessionaire. She gave him check No. 29, covering both coats, which he delivered to plaintiff's husband. No value was stated at the time of such delivery of plaintiff's coat to Jane Powers or upon the check issued by her. There was a label, with the name "Kriegel Furriers", on the lining of plaintiff's coat, and also the intials "C. J. C." sewed on the lining.

Some little time thereafter a well-dressed man and woman appeared at the check room and the man asked Jane Powers for the mink coat that "Joe" had checked, stating that the other couple in his party had the check but that he didn't want to go back for it. She told him that he would have to identify the coat in some manner, and he told her that the initials inside the coat were "C. J. C." and that the maker's label was "Kriegel". She thereupon delivered plaintiff's coat to him without requiring the production or surrender of the check. He was not the agent or designee of plaintiff. Plaintiff has never recovered her coat. The Concessionaire had, prior to this occurrence, given Jane Powers standing instructions that she could deliver checked garments to persons without receiving in exchange the checks issued therefor, provided that such persons could identify the garments without question.

The reasonable value of plaintiff's coat on February 16, 1946, was $4,500.

No payment, charge or fee was exacted by the Concessionaire, or by Jane Powers, for the checking of plaintiff's coat, but it is a generally recognized custom in New York City for persons using such check room facilities to give a "tip" to the check room attendant. Jane Powers did not receive any part of these tips; she was paid a straight salary of $35 per week. It is conceded that the check room was operated by the Concessionaire for profit.

Two signs containing printed copies of Sections 200, 201, 203-a, 203-b and 206 of the New York General Business Law, McK. Consol.Laws, c. 20, were posted by the Hotel on its ground floor—one at the registration desk in the hotel lobby and one over the head waiter's desk just inside the entrance to the bar and restaurant from the hotel lobby. No such sign was posted at or near the check room at which plaintiff's coat was checked.

It is clear from these facts that Jane Powers was guilty of gross negligence in delivering the coat to an imposter without production of the check, and that her employer, the Concessionaire, is liable for the value thereof. Its obligation was that of a bailee—whether gratuitous or for hire is unimportant. Wrongful delivery was a breach of its contract, (Dalton v. Hamilton Hotel Operating Co., Inc., 242 N.Y. 481, 487–489, 152 N.E. 268) and amounted to a conversion of the coat.

But the Concessionaire contends that its liability is limited to $75 under Section 201 of the New York General Business Law. The material portion of this section reads as follows: "as to property deposited by guests or patrons in the parcel or check room of any hotel or restaurant, the delivery of which is evidenced by a check or receipt therefor and for which no fee or charge is exacted, the proprietor shall not be liable beyond seventy-five dollars, unless such value in excess of seventy-five dollars shall be stated upon delivery and a written receipt, stating such value, shall be issued, but he shall in no event be liable beyond one hundred dollars, unless such loss occurs through his fault or negligence."

This Section, as originally enacted, Laws of 1855, Chapter 421, applied only to hotel keepers. The portion just quoted was added by the Laws of 1924, Chapter 506. It did nothing more than to create a limited liability for both hotel keepers and restaurant proprietors. There is no hint that the amendment was intended to apply to independent operators of check rooms, such as the present Concessionaire, and it should not be so extended by implication. As was said in Ramaley v. Leland, 43 N.Y. 539, 541, 3 Am.Rep. 728: "The statute permits a proprietor of a hotel to relieve himself from his strict common law liability, in respect to certain classes of property, upon compliance with the prescribed conditions. But the exemption is limited to the particular species of property named, and, being in derogation of the common law, cannot be extended in its operation and effect by doubtful implication, so as to include property not fairly within the terms of the act."

The Concessionaire did not operate the restaurant. Nor was plaintiff's coat "property deposited by guests or patrons" of the Concessionaire. Plaintiff was a guest or patron of the Hotel, not of the Concessionaire. Furthermore, the Concessionaire cannot be considered as an employee or agent of the Hotel and, therefore, protected by the limited liability accorded to the Hotel. It was an independent contractor operating, as it admits, the check room for profit.

No New York authority has been cited, and I have found none, holding that an independent operator of a check room in a restaurant is entitled to the limited liability of $75 for property deposited there. I find nothing to that effect in Gardner v. Roosevelt Hotel, Inc., 263 App.Div. 268, 32 N.Y.S.2d 208, relied upon by the Concessionaire.

I hold, therefore, that the Concessionaire is liable for the full value of plaintiff's coat. With this disposition I think the complaint should be dismissed as against the Hotel.

There may be judgment in favor of plaintiff against the defendant Richards & Hassen Enterprises, Inc. for $4,500, with interest from February 16, 1946 and costs,

920

and dismissing the complaint as against the defendant Belplaza Corporation, with costs.