## Heights Fire Company Liquor License Case.

Argued March 12, 1956. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, ERVIN, and CARR, JJ. (WOODSIDE, J., absent).

*Robert H. Jordan,* Special Deputy Attorney General, with him *Horace A. Segelbaum,* Deputy Attorney

General and *Herbert B. Cohen,* Attorney General, for appellant.

*B. V. O'Hare,* for appellee.

OPINION BY WRIGHT, J., April 11, 1956:

On October 21, 1953, the Pennsylvania Liquor Control Board entered an order suspending the club liquor license of the Heights Fire Company for a period of thirty days. The order was based upon the following findings of fact: "1. On May 1, 1953, the licensed organization, by its servants, agents or employes sold liquor and/or malt or brewed beverages on the licensed premises to non-members. 2. On May 1, 1953, the licensed organization, by its servants, agents or employes maintained gambling devices and permitted gambling on the licensed premises". The licensee appealed to the Court of Quarter Sessions of Schuylkill County. After a hearing de novo, the said court found facts as follows: "(a) On May 1, 1953, the licensed organization, by its servants, agents or employees sold liquor and/or malt and brewed beverages on the licensed premises to non-members. (b) On May 1, 1953, the licensed organization, by its servants, agents or employees *did not* maintain gambling devices and *did not* permit gambling on the licensed premises". Concerning its second finding the court said: "With respect to maintaining gambling devices and permitting gambling on the premises, we find no competent evidence in the record to sustain the accusation". As a result, the court modified the suspension from thirty days to ten days. This appeal by the Pennsylvania Liquor Control Board followed.

The record shows that on the date in question several agents of the Board visited appellee's premises. Paul C. Kresge testified that, after buying several

drinks, both of beer and whiskey, he called the Pennsylvania State Police at Frackville "because there were slot machines on the premises which we had played during this interval"; further that there were three machines, a five-cent machine, a ten-cent machine, and a twenty-five cent machine. James Carmanti testified that he "observed the three slot machines" and, while he did not play them, he "observed the others play the machines". H. R. Lady testified that the three slot machines were in the bar, readily accessible to anyone, and that he "had played all of the machines and got small winnings on the nickel machine"; further that he also observed "one of the customers" playing the machines. George Barnhart testified that "there were three slot machines displayed for playing. The other officers and myself both played them". Officer Fisher of the Pennsylvania State Police testified that, when he entered the club, he "immediately saw the slot machines set up", and that he "played the machines to see if they were in working order". Officer Zona testified that, when he entered the club, he "observed the slot machines. They were placed at the left side of the bar as you enter the room, and there were three slot machines—five, ten, and twenty-five cent machines. We tried the machines and they were working. So, we identified ourselves and confiscated the machines".

There was no objection to any of the foregoing testimony, nor was any attempt made to contradict it. On the contrary, James Steele, a member of the Heights Fire Company and called as its witness, testified that he was head steward of the club, and that he knew the three slot machines were on the premises. He stated that there were instructions from the officers of the company "to all of the employes not to use those machines". Alfred Mankewicz, then the club vice- president and now its president and secretary, who acted

as bartender part of the time the officers were on the premises, also testified for appellee. When questioned about the obvious presence of the slot machines, he replied: "Well, they were just there, that is all".

The lower court makes no attempt to explain its finding of "no competent evidence in the record to sustain the accusation" that appellee maintained gambling devices and permitted gambling on the licensed premises. We are unable to perceive how such a finding may be sustained. The court below does not state that the testimony adduced by the Board was not credible, indeed such a statement would be precluded by the testimony of appellee's own witnesses. Nor can the Court of Quarter Sessions refuse to believe witnesses merely because of a conclusion that the penalty imposed by the Board was too severe: *East End Ex-Service Men's Association Liquor License Case,* 162 Pa. Superior Ct. 512, 58 A. 2d 194.

The present appeal is in the nature of a certiorari in its broadest sense, and it is our function to determine whether there is evidence to support the order appealed from, and whether the court below committed an error of law or abused its discretion: *Mami's Liquor License Case,* 144 Pa. Superior Ct. 285, 19 A. 2d 549. The Court of Quarter Sessions "does not have discretionary power to act in an arbitrary manner" in reversing an order of the Board: *Enlisted Men's Club of Trafford Liquor License Case,* 166 Pa. Superior Ct. 26, 70 A. 2d 696. While it may reverse the Board upon finding a different set of facts, *Philadelphia J-L Corporation Liquor License Case,* 166 Pa. Superior Ct. 237, 70 A. 2d 698, it cannot find facts which are not supported by the evidence, nor may it capriciously disregard competent evidence of violations by the licensee: *Janiro's Liquor License Case,* 163 Pa. Superior Ct. 398, 62 A. 2d 102. Our conclusion in the case at bar is that

the lower court was not warranted in modifying the suspension.

The order of the court below is reversed, and the order of the Board is reinstated.

WOODSIDE, J., did not participate in the consideration or decision of this case.