Carver House, Inc. Liquor License Case.

Argued November 13, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY and NIX, JJ.

reargument refused
October 30, 1973.

*Abraham J. Levinson,* for appellant.

*Alexander J. Jaffurs,* Assistant Attorney General, with him *Albert B. Miller,* Special Assistant Attorney General, and *J. Shane Creamer,* Attorney General, for Liquor Control Board, appellee.

OPINION BY MR. JUSTICE ROBERTS, September 19, 1973:

On August 3, 1967, the Pennsylvania Liquor Control Board [Board] cited appellant, a restaurant liquor licensee in Philadelphia, for violations of the Liquor Code. An evidentiary hearing was held, at which it was affirmatively established that one of appellant's employees had, on two occasions, sold narcotics on the licensed premises. On the basis of this factual finding, appellant's liquor license was revoked.

Carver House appealed that order to the Philadelphia Court of Common Pleas. Act of April 12, 1951, P.L. 90, art. IV, as amended, 47 P.S. §4-471 (Supp.

1972). That court, without making findings at variance with those found by the Board examiner, vacated the Board-imposed revocation on the ground that the penalty was inconsistent with sanctions applied in similar cases. The matter was remanded to the Board "for further consideration in accordance with this opinion."

No appeal was taken, and on June 29, 1969, the Board, without developing additional facts, entered a second order revoking appellant's license. Carver House again appealed to the court of common pleas; however, on this appeal, the court determined that since it was unable to make findings of facts materially at odds with those of the Board, it was without authority to modify the Board's order of revocation. On appeal, the Commonwealth Court affirmed. *Carver House, Inc. v. Liquor Control Board,* 3 Pa. Commonwealth Ct. 453, 281 A.2d 473 (1971). This Court granted allocatur and we now affirm.

The Commonwealth Court correctly held, in accordance with all prior decisions of this Court and the Superior Court, that the court was without authority to alter a penalty imposed by the Liquor Control Board, where such penalty was obviously within the Board's statutorily conferred powers.

"Under the [Liquor] Code (Act of April 12, 1951, P. L. 90, Art. IV, sec. 471, [as amended] 47 P.S. sec. 4-471 [Supp. 1972]), the court on appeal from a suspension . . . 'shall, in the exercise of its discretion, sustain, reject, alter, or modify the findings, conclusions and penalties of the board, based on the findings of fact and conclusions of law as found by the court.' It is by now well established that on such appeal the lower court must make findings of fact on the material issues different from those as found by the board before the action taken by the board can be reversed or changed. Unless the lower court's change or modification is so grounded, it cannot stand. Appeal of Home-

stead Social and Beneficial Society, 169 Pa. Superior Ct. 593, 85 A.2d 265; Turner v. Pennsylvania Liquor Control Board, 161 Pa. Superior Ct. 15, 53 A.2d 849; Enlisted Men's Club of Trafford Liquor License Case, 166 Pa. Superior Ct. 26, 27, 70 A.2d 696." *Italian Citizens Nat'l Ass'n of America Liquor License Case,* 178 Pa. Superior Ct. 213, 216, 115 A.2d 881, 882 (1955). Here, no different findings of fact on material issues were made by the hearing court. Accordingly, that court was correct in its ruling (as was the Commonwealth Court in affirming) that it was without authority to modify the penalty imposed by the Liquor Control Board. See also *Banterla Liquor License Case,* 166 Pa. Superior Ct. 544, 72 A.2d 602 (1950); *Pacewicz Liquor License Case,* 152 Pa. Superior Ct. 123, 31 A.2d 361 (1943).

The interpretation of Section 471 of the Liquor Code, as set out above, has remained constant for over twenty years. In 1960, the Superior Court reaffirmed its holding that

"unless the findings of fact of the court below are different from those of the board, the penalties imposed by the board in the proper exercise of its discretion must stand. Enlisted Men's Club of Trafford Liquor License Case, 166 Pa. Superior Ct. 26, 29, 30, 70 A.2d 696 (1950); Banterla Liquor License Case, 166 Pa. Superior Ct. 544, 72 A.2d 602 (1950).

"The court may not reduce the penalty imposed by the board solely because it thinks the penalty was too severe. Homestead Social & Beneficial Society Appeal, 169 Pa. Superior Ct. 593, 595, 84 A. 2d 265 (1951)." *East End Social Club Liquor License Case,* 193 Pa. Superior Ct. 583, 586, 165 A.2d 253, 254 (1960).

Again in 1971, the Superior Court restated that "[t]he law is clear that the lower court may not change or modify a penalty imposed on a licensee by the Board

without making specific material changes in the facts as found by the Board: *Maple Liquor License Case*, 207 Pa. Superior Ct. 237, 217 A.2d 859. Nor may the court below capriciously disregard competent evidence of violations by the licensee: *Petty Liquor License Case*, 216 Pa. Superior Ct. 55, 258 A.2d 874. Nor may the court below reduce the penalty imposed by the Board because it is considered too severe: *Alston Beer Distributor Liquor License Case*, 214 Pa. Superior Ct. 32, 251 A.2d 808." *Pace Liquor License Case*, 218 Pa. Superior Ct. 300, 302, 280 A.2d 642, 643-44 (1971). See also *Yugovich Liquor License Case*, 217 Pa. Superior Ct. 353, 272 A.2d 510 (1970); *Delpark Athletic Club Liquor License Case*, 215 Pa. Superior Ct. 1, 257 A.2d 600 (1969).[1]

Appellant would have us radically and unwisely depart, without reason or logic, from over twenty years of salutary and well-settled case law. This we will not do. What this Court recently stated in *Noonday Club of Delaware County, Inc. Liquor License Case*, 433 Pa. 458, 464-65, 252 A.2d 568, 572 (1969) (four members of this Court agreeing that the Superior Court had erred by reducing the penalty imposed by the Board) is controlling here and is dispositive of appellant's contentions.

"[A]s a matter of judicial restraint and in the interests of a more effective and efficient administration of our entire judicial system in this Commonwealth, . . . penalties imposed by lower courts [or the Board] which are within the prescribed maximum and

---

[1] It should be noted that Section 471 of the Liquor Code has been specifically amended on three different occasions since 1951. See Act of September 15, 1961, P.L. 1325; Act of Janary 13, 1966, P.L. 1301; Act of July 31, 1970, Act No. 223. The Legislature, in adopting these changes in Section 471, has, at no time, altered the interpretation given that section by the appellate courts of this Commonwealth.

minimum allowable penalties under the applicable statutory provisions are not subject to review on appeal except in rare and unusual circumstances involving constitutional rights.[2] The mere fact that each individual judge both on the Superior Court and this Court might have imposed a less severe penalty had he been the trial judge below, [or the Board] is not sufficient to permit a higher tribunal to substitute its judgment for the judgment of the lower tribunal. . . . Maple Liquor License Case, 207 Pa. Superior Ct. 237, 217 A. 2d 859 (1966); Heights Fire Company Liquor License Case, 181 Pa. Superior Ct. 56, 121 A. 2d 902 (1956); Homestead S. and B. Society Appeal, 169 Pa. Superior Ct. 593, 84 A. 2d 265 (1951). While the lower court under the statute as interpreted by case authority may reduce the penalty imposed by the Board when material changes in the findings of the Board are made, we find no sound, judicious reason why an appellate court should be permitted to review the penalty imposed by the lower court [or the Board]. If we were to hold otherwise, litigants could appeal solely on the basis that the penalty was too harsh or too lenient, a result of which undoubtedly would overburden an already overburdened appellate court system."

The order of the Commonwealth Court, therefore, is affirmed.

Mr. Justice MANDERINO took no part in the consideration or decision of this case.

---

[2] Obviously included in such "rare and unusual circumstances" would be a demonstration of invidious discrimination.

---

DISSENTING OPINION BY MR. JUSTICE POMEROY:

For reasons nowhere set forth in its opinion, the Court today makes a sacred cow of the Pennsylvania Liquor Control Board by holding that it is impossible for the Board to commit an abuse of discretion in im-

posing a penalty for violation of the Liquor Code where the facts are not in dispute.[1] I must dissent from this unwise and unjustifiable departure from the normal minimum judicial review of administrative action.[2]

The majority asserts that the issue today is controlled by "over twenty years of salutary and well settled case law." In my view the case law referred to is neither salutary nor well settled.

Appeals from orders of the Board revoking liquor licenses are provided for by section 471 of the Liquor Code, 47 P.S. §4-471 (Supp. 1972-73). That section reads in pertinent part: "In the event the person who was fined or whose license was suspended or revoked by the board shall feel aggrieved by the action of the board, he shall have the right to appeal to the court of quarter sessions or the county court of Allegheny County in the same manner as herein provided for appeals from refusals to grant licenses. Upon appeal, the court so appealed to shall, in the exercise of its discretion, sustain, reject, alter or modify the findings, conclu-

---

[1] Were the choice put to me of immunizing any one administrative agency of the Commonwealth from even a minimum judicial review of its action in imposing a penalty, the Liquor Control Board would not be my selection. The monopoly business of liquor distribution and licensing is perhaps the area of the State's operation more likely than others to become infected with considerations inappropriate to the exercise of impartial government.

[2] By its decision the Court today rejects a suggestion made by the Commonwealth Court, see *The Carver House, Inc. v. Liquor Control Board*, 3 Pa. Commonwealth Ct. 453, 457, n.2, 281 A. 2d 473 (1971) (per CRUMLISH, J.,), that we reconsider our decision in *Noonday Club of Delaware County, Inc. Liquor License Case*, 433 Pa. 458, 252 A. 2d 568 (1969), and permit the Commonwealth Court and the lower courts to review penalty orders of the Board "at least [for] manifest abuses of discretion or errors of law." Mr. Justice MANDERINO, who does not participate in today's decision, was a member of the three-judge panel and joined in Judge CRUMLISH'S opinion.

sions and penalties of the board, *based on the findings of fact and conclusions of law as found by the court."* (My emphasis). Appellant argues that this section mandates a trial *de novo,* to be conducted without reference to either the findings of fact or the penalty imposed by the Board. The Board argues on the other hand that the court of common pleas may not change or modify the penalty imposed by the Board unless it first finds facts different from those found by the Board; in other words, if the court sustains the findings of the Board, it may not disturb the penalty. In support of that position the Board cites a long list of authority. See, e.g., *In re Noonday Club of Delaware County, Inc. Liquor License,* 433 Pa. 458, 252 A. 2d 568 (1969); *In re Yugovich Liquor License,* 217 Pa. Superior Ct. 353, 272 A. 2d 510 (1970); *In re East End Social Club Liquor License,* 193 Pa. Superior Ct. 583, 165 A. 2d 253 (1960); *In re Italian Citizens National Assoc. of America Liquor License,* 178 Pa. Superior Ct. 213, 115 A. 2d 881 (1955). As the Board states, there are many such cases decided by the Superior Court.

I cannot accept either position completely. There is no requirement that the reviewing court *must* hold a *de novo* hearing; it *may* do so. Neither can it be stated in absolute terms that if, either with or without a new hearing, the court sustains the findings of the Board, it cannot adjust the penalty assessed by the Board. My study of the decisions of the Superior Court here involved, however, persuades me that, properly understood and interpreted, they accurately reflect the division of responsibility that the legislature sought to establish as between the Liquor Control Board and the courts. A brief review of the statutory and case law development will serve to make this division clear.

Under the original Liquor Control Act of 1933, Act of November 29, 1933, P. L. (Special Session) 15, §13, an action to revoke or suspend a liquor license was

brought by petition of the "attorney general, the district attorney, or fifteen or more taxpayers . . . [in] the court of quarter sessions of the proper county for the revocation of such license." If such a court revoked or suspended a license under the original Act, review by the Superior Court was limited to a determination of whether "the court below exceeded its jurisdiction or its proper legal discretion." *In re Mark Liquor License,* 115 Pa. Superior Ct. 256, 263, 176 A. 254 (1935). The Superior Court refrained from substituting its independent judgment for that of the lower court. *In re Wolf Liquor License,* 115 Pa. Superior Ct. 514, 176 A. 260 (1935).

In 1937, however, the legislature amended the Liquor Control Act of 1933 to empower the Liquor Control Board *in the first instance* to "cite [a violating] licensee to appear . . . to show cause why such license should not be suspended or revoked. Upon such hearing, if satisfied that any such violation has occurred, or for other sufficient cause, the board shall immediately suspend or revoke the license . . . ." Act of June 16, 1937, P. L. 1762, §410. The question then arose of the proper scope of review in the courts of quarter sessions of license revocations and suspensions ordered in Board proceedings. In *In re Pacewicz Liquor License,* 152 Pa. Superior Ct. 123, 127-28, 31 A. 2d 361 (1943), the Superior Court observed (emphasis added): "The legislature, in committing by the amendment of 1937, the original power of revocation and suspension to the Liquor Control Board, instead of to the several courts of quarter sessions, was no doubt moved by the laudable desire to have one body, the board, pass upon those matters and impose the penalties for violations, *thus securing a reasonable uniformity of action,* rather than have sixty-seven separate jurisdictions impose them according to the varying ideas of the different judges. We see no other compelling reason for the change."

The court then affirmed a quarter sessions' order which had refused to modify a Board imposed penalty of revocation based on facts which the lower court had not found reason to alter, but at the same time the Superior Court noted that "we find no undue harshness in the revocation of a license under the circumstances of this case." In a case decided one year before *Pacewicz*, supra, the Superior Court reversed a court of quarter sessions which had modified a Board imposed penalty without finding different facts. *In re License No. E-914*, 149 Pa. Superior Ct. 97, 25 A. 2d 778 (1942). In that case, however, the Superior Court remarked that the Board, in imposing a revocation rather than a suspension, could "neither be convicted of error of law nor abuse of discretion." Id. at 100. See also *In re Mami Liquor License*, 144 Pa. Superior Ct. 285, 19 A. 2d 549 (1941).

The view of the Superior Court as expressed in the three opinions from the 1940s cited in the preceding paragraph was, I think, sound and salutary. After the amendment of 1937 the task of matching penalty with violation had been placed primarily in the hands of the Liquor Control Board and absent a finding of different facts on review, the lower court was not to substitute its independent judgment as to penalty for that of the Board. I do not understand this principle, as originally expressed by the Superior Court, to have been that the lower court could not or would not review for "error of law or abuse of discretion"; this would have been to say, in effect, that the Board was free to impose a penalty "[unduly] harsh . . . under the circumstances of [the] case." *Pacewicz*, supra, at 128.

It is true that the frequent repetition of the principle in many subsequent cases has tended to obscure its original meaning. Thus in more recent cases the formulation of the principle has been in terms of lack of power to change a penalty rather than in terms of

judicial restraint not to substitute the court's independent views of penalty. The drift in this direction was abetted by the opinion in *Noonday Club of Delaware County, Inc. Liquor License,* 433 Pa. 458, 252 A. 2d 568 (1969), which contains the following language: "In the instant case had [the lower court found the facts to be as found by the Board], the court below as well as the Superior Court would have been *powerless* to modify the penalty imposed *no matter how harsh or severe."* 433 Pa. at 465.[3] Similarly, recent decisions of the Superior Court have omitted the qualification as to abuse of discretion and unduly harsh penalties, and instead speak only of "authority" or "power" to modify a Board-imposed penalty. See, e.g., *Pennsylvania Liquor Control Board v. Pace,* 218 Pa. Superior Ct. 300, 280 A. 2d 642 (1971); *Delpark Athletic Club v. Pennsylvania Liquor Control Board,* 215 Pa. Superior Ct. 1, 257 A. 2d 600 (1969); *In re Yugovich Liquor License,* 217 Pa. Superior Ct. 353, 272 A. 2d 510 (1970); *Maple v. Pennsylvania Liquor Control Board,* 207 Pa. Superior Ct. 237, 217 A. 2d 859 (1966). To the extent that these cases serve to place discretion in the Board in the first instance to assess the needs of the system of liquor regulation in Pennsylvania and to impose penalties accordingly and thus "secure a reasonable uniformity of action", I would approve of them. To the extent that these cases can be read as announcing a total lack of power in the court charged with reviewing a Board-imposed penalty to correct an abuse of discretion by the Board, I would disapprove of them.

---

[3] Because the opinion published in *Noonday Club,* supra, expressed the views of only two Justices of this Court, it is not, of course, of decisional authority. The issue in *Noonday Club* was not that before the Court today. In *Noonday* the court of quarter sessions had affirmed a license revocation ordered by the Board, but the Superior Court, on undisputed facts, had changed the revocation to a suspension. *The issue was, therefore, the scope of review of*

I should have thought it well settled that where the Legislature has entrusted an agency with discretion, the judiciary will avoid substituting its independent judgment for the manner in which that discretion should be exercised, and yet at the same time will review agency action for error of law or abuse of discretion (i.e., bad faith, fraud or capricious action). *Petition of Acchione,* 425 Pa. 23, 227 A. 2d 816 (1967); *Blumenschein v. Housing Authority of Pittsburgh,* 379 Pa. 566, 109 A. 2d 331 (1954); *Eways v. Reading Parking Authority,* 385 Pa. 592, 124 A. 2d 92 (1956).[4] Although the opinion of the Court today badly blurs this distinction, there is every indication that the Commonwealth Court is well aware of it and capable of applying it correctly. See, e.g., *Travis v. Department of Public Welfare,* 2 Pa. Commonwealth Ct. 110, 277 A. 2d 171 (1971); *North American Coal Corp. v. Air Pollution Commission,* 2 Pa. Commonwealth Ct. 469, 279 A. 2d 356 (1971).[5]

---

*the Superior Court over the court of quarter sessions.* Four members of this Court agreed in *Noonday* that the Superior Court erred in altering a penalty imposed by the Board *and affirmed by quarter sessions.*

[4] I note that the Administrative Procedure Act, 5 U.S.C. §706 (2)(A) (1970), sets the standard for review by federal courts of penalties imposed by federal administrative agencies; the requirement is that the penalty imposed not be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." See *Butz v. Glover Livestock Commission Co., Inc.,* 411 U.S. 182, 36 L. Ed. 2d 142, 41 U.S.L.W. 4463 (1973); *FTC v. Universal Rundle Corp.,* 387 U.S. 244, 18 L. Ed. 2d 749 (1967); *Moog Industries, v. FTC,* 355 U.S. 411, 2 L. Ed. 2d 370 (1958); *American Power & Light Co. v. SEC,* 329 U.S. 90, 91 L. Ed. 103 (1946); *Phelps Dodge Corp. v. NLRB,* 313 U.S. 177, 85 L. Ed. 1271 (1941).

[5] *North American Coal Corp. v. Air Pollution Commission,* supra, 2 Pa. Commonwealth Ct. at 480: "It is not within the purview or the scope of review of an appellate court to change the adjudication of a regulatory agency merely because it disagrees with the philosophical approach of the agency. . . . A reviewing court should only overturn an adjudication of an agency where it has violated a citizen's

The question here is not therefore one of the *power* to review a Board-imposed sanction, but rather the *scope of review* permitted.[6] I quite agree that the court of common pleas cannot be permitted merely to substitute its independent wisdom for that of the Board, to reduce or increase a penalty merely because thought by the court to be "too harsh or too lenient"; I do not suggest otherwise. On the other hand, I think that if the Board, in imposing a sanction (authorized by statute) on undisputed facts, acted "without rational explanation, [or] inexplicably departed from established policies, or rested [its decision] on [an] impermissible basis such as an invidious discrimination against a particular race or group, or . . . on other considerations that [the Legislature] could not have intended to make relevant,"[7] then it is the proper function and indeed the duty of the judiciary to correct such an abuse of discretion.

Returning to the case at bar, the original opinion of the court of common pleas suggests an inexplicable departure by the Board from established policies, and yet in the second opinion, despite a recognition that "an injustice seems to result," the court concluded that it

---

constitutional rights or has abused its discretion or has committed an error of law."

*Travis v. Department of Public Welfare*, supra, 2 Pa. Commonwealth Ct. at 115: "Under our system of separation of powers, the courts may not set aside administrative actions in the absence of bad faith, fraud, capricious action or abuse of power."

[6] See K. C. Davis, Administrative Law Treatise §28.02, at 5-6 (1958): "The usual assumption has been that all administrative action is either reviewable or not reviewable—that questions of scope of review can arise only with respect to reviewable action . . . . But a close examination of the cases shows that the reality is not nearly so simple. Instead of the two categories of the reviewable and the unreviewable, the cases reveal a large number of categories distinguishable from each other on the basis of scope of review."

[7] *Wong Wing Hang v. Immigration and Naturalization Service*, 360 F. 2d 715, 719 (2d Cir. 1966).

was powerless to modify a penalty imposed in abuse of discretion. As detailed above, I believe the lower court was in error, although quite understandably so, in so thinking. I would accordingly remand this matter to the court of common pleas for review under the standard set forth in this opinion.

Mr. Justice O'BRIEN joins in this dissenting opinion.