## In Re: Bensalem Township Citizens Club v. Pa. Liquor Control Board

*Kenneth W. Makowski,* for the Pennsylvania Liquor Control Board.

*Joseph L. DiTomo, Jr.,* for the Bensalem Township Citizens Club.

GARB, *P.J.,* November 27, 1985 — This is an appeal from the order of the Pennsylvania Liquor Control Board (board) of March 1, 1983 in which appellant's club liquor license is revoked. At the hearing before the board the following findings of fact were made:

"1. The licensed organization, by its servants, agents or employees sold liquor and/or malt or brewed beverages on the licensed premises to a non-member on September 23, October 2, 1982.

"2. The licensed organization, by its servants, agents or employees sold, furnished and/or gave liquor and/or malt or brewed beverages between the hours of 3:00 a.m. and 7:00 a.m. on October 2, 1982.

"3. The licensed organization, by its servants, agents or employees permitted gambling, gambling devices, paraphernalia and/or lotteries on the licensed premises on September 23, 1982."

A hearing was held before the undersigned during which Allen Stare, an enforcement officer of the board, testified on behalf of the board. Thomas Tyler, the recording secretary and steward of appellant testified for appellant. Having heard the foregoing testimony, we hereby make the following

## FINDINGS OF FACT

1. The licensee is the holder of club liquor license no. C-3526 and is located at 5433 Bensalem Boulevard, Bensalem Township, Bucks County, Pa.

2. On September 23, 1982, Allen Stare was an enforcement officer for the board engaged in an investigation of the activities of appellant.

3. On two occasions prior to August 16, 1982, the date on which the investigation began, Stare had attempted to gain admission to the club without success.

4. On September 23, 1982 at approximately 8:05 p.m., Stare arrived at the club premises, rang a buzzer and was admitted by an unidentified person.

5. At that time, Stare was not a member of the club.

6. Stare proceeded to the bar where he was met by one Bud Bader who asked Stare if he was a member of the club to which Stare responded in the negative. Stare was asked to sign a book before he was permitted to purchase any alcoholic beverages.

7. After having signed the book, Stare was told by Bader that if anyone asked who he was he was to respond that he was Bader's brother-in-law.

8. At 8:25 p.m., Stare was asked if he wished to become a member of the club, to which he responded in the affirmative, and Bader then furnished an application blank, a copy of which was given to Stare in return for which Stare paid the sum of five dollars. The bartender, "Gloria," then signed the back of the application and Bader signed as the sponsor.

9. The by-laws of the club provide that any regular or social member of the club may sponsor a new applicant. Bader is a regular member of the club.

10. Another male person at the bar was playing an electronic poker machine, there being two such machines near the entrance doorway.

11. At approximately 8:35 p.m., the man playing said machine told Bader that he wished to stop. Bader then said something to the bartender, who

placed a piece of paper in the cash register and, as a result thereof, gave five dollars to the person playing the poker machine. At that time, the poker machine reflected 20 credits.

12. Stare then left the premises.

13. On October 2, 1982, at approximately 2:00 a.m., Stare returned to the premises and rang the buzzer requesting admission.

14. The person monitoring the front door asked if he was a member to which he responded in the negative and was refused entry until he showed his copy of the application form he had completed on September 23, 1982, whereupon he was permitted entry.

15. Stare then proceeded to the bar where he ordered and was furnished three bottles of beer at 2:15, 2:50 and 3:20 a.m. Shortly after 3:20 a.m., the bartender left the bar and the club was closed.

## DISCUSSION

This appeal is taken from the opinion and order of the board pursuant to the provisions of section 471 of the liquor code, the Act of June 3, 1971, P.L. 143, 47 P.S. §4-471. Therefore, we hear this matter de novo making our own findings of fact and conclusions of law and in the exercise of our discretion either sustain, reverse or modify the action taken by the board. Noonday Club of Delaware County Inc. Liquor License Case, 433 Pa. 458, 252 A.2d 568 (1969).

As noted previously, there were three basis upon which the order of revocation was entered. The first of these is that appellant served a nonmember, Stare, on September 23 and October 2, 1982. Although Stare was in fact a nonmember on both of

these occasions, we do not believe that the furnishing of alcoholic beverages to him on those occasions is a violation of the liquor code. The evidence which we have found reveals that on September 23, 1982 Stare was asked whether he desired membership in the club and was permitted to and did complete a written application, paying five dollars for the application fee. The foregoing, of course, is in compliance with the requirements as set forth in section 102 of the Liquor Code. The bylaws of the club permitted him to participate as a club member for a period of 30 days, during which the application could be investigated and voted upon by the membership. He was sponsored by an active member of the club and the name of the bartender was written on the reverse side of the application. He retained a copy of the application blank. Therefore, on September 23 and October 2, 1982, it was permissible for him to purchase alcoholic or malt or brewed beverages upon the premises by the by-laws of the club itself. He previously had been denied entry into the club, and was denied entry on October 2, 1982, until he displayed his membership application. The procedure which was followed was in conformity with the requirements of the Liquor Code. Distinguish Veterans of Foreign Wars Liquor License Case, 208 Pa. Super. 78, 220 A.2d 407 (1966).

With respect to the finding of gambling or the permitting of gambling devices or paraphernalia and/or lotteries on the premises, we believe that the record adequately establishes that the unidentified person who was playing the poker machine was engaged in gambling. The machine reflected 20 credits and when he advised Bader that he did not wish to play any longer, Bader than spoke to the bartender, who completed some sort of form or piece of paper which was somehow recorded on the cash regis-

ter and the player was given five dollars. We believe that this evidence furnished a sufficient basis upon which a finder of fact can infer that gambling was engaged in with respect to the poker game. However, we are not satisfied that this record establishes that the poker game itself was a gambling device per se as that term is defined. Clearly, the game was used for gambling purposes. However, this record is silent on whether the player paid to play, consideration, or the manner of operation of the machine, i.e., a result determined by chance rather than skill. See Commonwealth v. Two Electronic Poker Game Machines, 502 Pa. 186, 465 A.2d 973 (1983). We have found that there was a reward, but the evidence is equivocal as to whether there was a knockdown button. We simply are unable, on this record, to determine whether these were gambling devices per se.

We are likewise satisfied that brewed beverages were furnished between the hours of 3:00 a.m. and 7:00 a.m. on October 2, 1982. Section 492 of the Liquor Code provides that it shall be unlawful for any club retail dispenser to sell malt or brewed beverages between the hours of 3:00 a.m. and 7:00 a.m. on any day. The evidence on this record clearly establishes that on October 2, 1982, Stare was permitted to purchase and consume a beer at 3:20 a.m. Therefore, this finding of fact is established and accepted.

In summation, therefore, we have found on our independent record that finding of fact no. 1, respecting the sale of alcoholic beverages to a nonmember on September 23, and October 2, 1982, has not been established. We have found that gambling was permitted on the premises but that there was inadequate evidence upon which to find gam-

bling devices or paraphernalia on the premises. Therefore, finding of fact no. 3 is partially affirmed and partially dismissed. We likewise found that the entirety of finding of fact no.2 regarding sale of malt or brewed beverages after 3:00 a.m. and before 7:00 a.m. has been established. Therefore, we must address the question of the penalty of revocation as imposed by the board. In this de novo proceeding, we are required to make a complete determination of all facets of the case, but our discretion is limited in the area of imposing penalties "when no material changes are made in the findings of the board." Accord, Carverhouse Liquor License Case, 454 Pa. 38, 310 A.2d 81 (1973), and Commonwealth v. M.S.G., Inc., 7 Pa. Commw. 540, 297 A.2d 556 (1972). We may not change or modify an order of the board unless we find a different set of facts and we may not reduce a penalty imposed merely because we may consider it as too severe. However, we may enter any findings which are based upon additional evidence or upon a conflict of testimony and if appropriate, the findings may permit a modification of the penalty originally imposed by the board. Commonwealth v. Eclectic Enterprises, Inc., 76 Pa. Commw. 626, 464 A.2d 683 (1983).

Based upon the facts which we have found, and to the extent that they are at variance with those made by the board, we believe that the extreme penalty of revocation is not indicated. However, section 471 of the Liquor Code provides that if the violation in question is a third or subsequent violation of this act occurring within a period of four years, the board shall impose a suspension or revocation. In fact, this is the fourth violation of this act within a period of four years. Therefore, the penalty must be either a suspension or revocation. On that basis, we

will herein order that the license in question be suspended for a period of 30 days to begin on December 8, 1985 at 7:00 a.m.

## ORDER

And now, this November 27, 1985, it is hereby ordered that the order of the Pennsylvania Liquor Control Board of March 1, 1983 is modified to provide that the license of appellant is supended beginning at 7:00 a.m. on December 8, 1985 for a period of 30 days.