## Flomar Bar Corporation Appeal

*Arthur S. Lorch,* for appellant.

*Russell C. Wismer,* for Liquor Control Board.

GUERIN, J., June 26, 1962.—This matter came before us on appeal by Flomar Bar Corporation from an order issued by the Pennsylvania Liquor Control Board suspending appellant's license for a period of 101 days based upon the following findings:

1. The licensee, by its servants, agents or employes, is not the only person pecuniarily interested in the operation of the licensed premises.

2. The licensee, by its servants, agents or employes, appointed a manager without board approval.

Hearings were held before an examiner for the board on June 7, 1960, and September 30, 1960. It was stipulated at bar that we should consider this appeal upon the record taken before the examiner, with the same force and effect as if that testimony had been given on a hearing de novo in open court.

The following uncontroverted facts appear from the record:

April 17, 1958, this liquor license was first issued to appellant.

August 28, 1958, a "Financing Statement and Loan Commitment" were executed between S. & M. Finance Corporation and appellant.

September 19, 1958, the board approved a change of officers of appellant corporation, wherein Emma Mc-Kiethan was secretary, treasurer and director; Evelyn Simms, president and manager; Morris Rabinowitz and Isadore Rabinowitz, directors designated by S. & M. Finance Corporation. The two latter are brothers and are associated with S. & M. Finance Corporation. Emma McKiethan was the sole stockholder of 50 shares of appellant corporation, which she bought for $38,000, paying $2,000 in cash, and the balance of $36,000 was secured by a loan of $29,000 from S. & M. Finance Corporation, and a judgment note payable to the seller.

October 13, 1958, there were meetings of the board of directors and of the shareholders of appellant corporation. At this meeting, the loan commitment and financing statement dated August 28, 1958, from S. & M. Finance Corporation were approved and a security agreement dated October 13, 1958, was executed, providing for a loan of $29,000, plus $6,960 to cover interest and service charges, a total of $35,960, which was to be repaid in 207 weekly instalments of $173 each. Emma McKiethan, the sole stockholder, assigned in blank her stock certificate for 50 shares and pledged it as collateral security with S. & M. Corporation. Resignations of corporate officers were executed undated, in the event of default by appellant corporation.

November, 1958, appellant defaulted in payment to S. & M. Finance Corporation.

February 4, 1960, Emma McKiethan, who had remained in charge, discontinued her association with

the business. Thereupon, the remaining directors, Morris Rabinowitz and Isadore Rabinowitz, acting on behalf of Flomar Bar Corporation, this appellant, designated David Brofman to take temporary charge of the business.

February 9, 1960, Flomar Bar Corporation, again acting through its remaining directors, filed with the board form 470 B, noting a change of manager, the new manager being Warren Hill, which change was approved by the board on June 30, 1960.

March 23, 1960, Flomar Bar Corporation entered into a written agreement of sale with David Brofman, of a corporation to be formed by him; the consideration being the assumption of the existing obligations of the seller.

April 7, 1960, articles of incorporation were approved for a new corporation, 2051 Flomar Bar, Inc. Its directors are David Brofman, Isadore Rabinowitz and Morris Rabinowitz, the two latter again having been designated by S. & M. Finance Corporation. Again, a loan commitment, security agreement, endorsement of stock certificates and resignations of corporate officers were similarly secured. Transfer of the liquor license from Flomar Bar Corporation to the new corporation, 2051 Flomar Bar, Inc., is now pending before the board.

It clearly appears from the record that the board was fully aware of the association of the Rabinowitz brothers, both as majority directors of the licensee corporation and as associates of S. & M. Finance Corporation. And with this knowledge the board, on September 19, 1958, approved the change of officers. No attempt at deception was practiced by anyone ever associated with this license. Full disclosures were made at all times to the board. The effect of the board's action in suspending this license is to penalize honest men who have at all times dealt openly with the board. The very

purpose of finance companies, in supplying large sums of money to licensees who pay substantial fees to the Commonwealth of Pennsylvania for the privilege of engaging in this business, would be completely thwarted if this suspension were allowed to remain in effect. We have no statistics before us, but we are perfectly aware that similar financial arrangements exist in innumerable cases throughout the State.

It has been argued to us that with financial arrangements such as exist in the present case, it is possible that the finance company may ultimately become the owner of the licensed establishment and the holder of the license in the event of default. This just is not so. The only holder of a license is the one authorized by the board. If there is a default, the finance company does not transfer the license. It is done on application of the licensee only. The finance company merely becomes a secured creditor, and it must act in good faith or its actions in directing the licensee to apply for a transfer will fail of approval by the board if such action be warranted. If the corporate licensee is satisfied with the terms of the proposed transfer, which it has indicated by the execution of the necessary documents, and if the proposed transferee meets all of the requirements of the board, the refusal to approve the application would be arbitrary and capricious.

We find no justification in the record for the action of the board in suspending this license. We find as a fact that the licensee is the only person pecuniarily interested in the operation of the licensed premises.

We further find as a fact that the appointment *by the licensee* of Warren C. Hill as manager, on February 9, 1960, five days after the previous manager had left the premises, was made known to the board by application for approval then made to the board on form 470 B supplied by it, pursuant to the rules and regulations of the board.

Counsel for the board have furnished no cases, appellate or lower court, to sustain the board's position. Our innate sense of justice prompts us to reverse the action of the board.

For these reasons, we sustain the appeal, set aside the action of the board, and revoke the suspension of 101 days.