Pennsylvania Liquor Control Board, Appellant, *v.* American and Croation Singing Society, Appellee.

Argued March 3, 1975, before President Judge Bow-
MAN and Judges Crumlish, Jr., Kramer, Wilkinson,
Jr., Mencer, Rogers and Blatt.

*J. Leonard Langan,* Assistant Attorney General, with him *Harry Bowytz,* Chief Counsel, and *Israel Packel,* Attorney General, for appellant.

*Eugene Edward J. Maier,* for appellee.

OPINION BY JUDGE WILKINSON, May 1, 1975:

On Saturday, January 15, 1971, two agents of appellant, the Pennsylvania Liquor Control Board, entered the premises of appellee, American and Croation Singing Society, for the purpose of conducting an inspection and inventory of the club and an examination of club records. The agents entered the club at approximately 10:00 p.m. that evening and departed at approximately 12:30 a.m., on January 16, 1971. As a result of the investigation, which included the above mentioned inspection, on March 8, 1971, the Liquor Control Board issued Citation No. 301, 1971, charging appellee with six specific violations of the Liquor Code, Act of April 12, 1951, P. L. 90, *as amended,* 47 P. S. §1-101 et seq. After a hearing, the Board issued an adjudication on December 13, 1971, in which it found appellee to be in violation of four of the six specified charges. The Board's findings read as follows:

"1. The licensed organization, by its servants agents or employes interfered with authorized Board employes in the performance of their duties on January 15 and 16, 1971.

"2. The licensed organization, by its servants, agents or employes refused authorized Board employes access to all records on January 15 and 16, 1971.

"3. The charter of the licensed organization was not in possession of the original incorporators or their direct or legitimate successors.

"4. The licensed organization falsified its application for Club Liquor License for the license years [sic] which expired October 31, 1971."

Based on these findings, the Board revoked appellee's liquor license and further ordered that appellee's bond, in the amount of $2,000.00, be forfeited in accordance with Section 471 of the Liquor Code, 47 P.S. §4-471.

Appellee then filed an appeal with the Philadelphia Court of Common Pleas. By stipulation of the parties, the court considered the case based on the evidence taken before the Board's hearing examiner. The court made new findings of fact in which it modified Board finding No. 1 and essentially dismissed Board findings Nos. 2, 3, and 4. The findings of the lower court, which correspond numerically with the Board's findings, read as follows:

"1. Fact I as found by the Liquor Control Board is modified in that the employees did act disorderly and did attempt to interfere with Board Employees, however, the Board's Employees acted unreasonably and failed to allow Petitioner due process of law.

"2. Fact II is not established. John W. Hollawell, the President of the Club, did indicate that some of the records were missing and some were in the hands of attorneys. It can hardly be expected that certain records should be completely accessible at Midnight on a Saturday night. There was no due process granted to Petitioner to secure records at a reasonable time.

"3. The Court finds that Fact No. III was not in any way substantiated.

"4. The Court further finds in Fact No. IV that there is no substantial falsification of its application on a

review of the records, see *Flomer Bar Case,* 201 Pa. Sup. 25 (1963), Opinion 30 D & C 2d, 93."

The court changed the Board's order revoking appellee's license and forfeiting its $2,000.00 bond, and instead ordered that appellee be fined $200.00.

The law is clear in Pennsylvania that the lower court cannot modify a penalty imposed by the Board unless the facts found by the court are materially different from those found by the Board. *Noonday Club of Delaware County, Inc. Liquor License Case,* 433 Pa. 458, 252 A. 2d 568 (1969); *Barone's Inc. v. Pennsylvania Liquor Control Board,* 10 Pa. Commonwealth Ct. 563, 312 A. 2d 74 (1973). The Liquor Control Board, appellant here, argues (1) that the facts found by the court in findings Nos. 1, 2, and 4 are not materially different from those found by the Board; and (2) that the court capriciously disregarded uncontradicted evidence when it found that Board finding No. 3 was not in any way substantiated. The Board asks us to reverse the lower court and to reinstate the revocation order of the Board.

Appeals from a Board order revoking a liquor license are governed by Section 471 of the Liquor Code, 47 P. S. §4-471. Discussing this section, the Pennsylvania Supreme Court has said:

"Pursuant to this section the lower court on appeal is required to hold hearings *de novo,* make its own findings of fact and conclusions of law and then in the exercise of *its own* discretion either sustain, reverse, or modify the action taken by the Board. The court is in no way limited either by statute or by case authority to a review of the Board's discretion, but rather makes a completely independent determination of all facets of the case in rendering its own decision. The only limitation placed upon the court is in the area of imposing penalties when no material changes are made in the findings of the Board." (Emphasis in original.) *Noonday Club, supra,* 433 Pa. at 467, 252 A. 2d at 573.

In order to determine whether the court below properly modified the Board's order, we must first determine whether the court's findings were materially different from those of the Board. We find that the court's findings Nos. 1, 2, and 4 are not materially different from the same numbered findings of the Board.

The lower court, in its first finding, agreed with the Board that employees of the club did act disorderly and did interfere with the Liquor Control Board agents. Based on the evidence as we read it, this is a very mild conclusion if only admitted and uncontested evidence is considered. The court, however, seems to find extenuating or mitigating circumstances in that "the Board's Employees acted unreasonably and failed to allow Petitioner [appellee herein] due process of law." The court, in its written opinion filed in support of its order, reasoned that the action of the agents in attempting an inspection late on a Saturday evening when the club was at its busiest period was unreasonable. Section 493(21) of the Liquor Code, 47 P.S. §4-493(21), provides:

"It shall be unlawful—

. . . .

"(21) For any licensee, or his servants, agents or employes, to refuse the board or any of its authorized employes the right to inspect completely the entire licensed premises at any time during which the premises are open for the transaction of business, or when patrons, guests or members are in that portion of the licensed premises wherein either liquor or malt or brewed beverages are sold."

Since the licensed premises were obviously open for the transaction of business on that particular Saturday evening, the agents were acting in accordance with law. Appellee was not denied due process of law. To the extent that the behavior of the agents, during the time they were attempting to carry out this inspection, may have

been somewhat less than one might expect of Board employees in the performance of their official duties, and this is far from clear, such behavior cannot constitute a defense to a violation which was clearly established by uncontradicted testimony. *See Pennsylvania Liquor Control Board v. The Italian Mutual Society of Gallitzin, Pa.*, 11 Pa. Commonwealth Ct. 78, 312 A.2d 844 (1973), and *Italian Citizens National Association of America Liquor License Case,* 178 Pa. Superior Ct. 213, 115 A.2d 881 (1955).

In the lower court's second finding of fact, the court again found essentially the same fact as did the Board in its second finding, i.e., that the agents were refused immediate access to all club records. Section 493(12) of the Liquor Code, 47 P. S. §4-493(12), provides:

"It shall be unlawful—

. . . .

"(12) For any liquor licensee, or any importing distributor or retail dispenser, to fail to keep on the licensed premises for a period of at least two years complete and truthful records covering the operation of his licensed business, particularly showing the date of all purchases of liquor and malt or brewed beverages, the actual price paid therefor, and the name of the vendor, including State Store receipts, or for any licensee, his servants, agents or employes, to refuse the board or an authorized employe of the board access thereto or the opportunity to make copies of the same when the request is made during business hours."

It is uncontested that most, if not all, of appellee's records were not on the licensed premises at the time in question, and that the agents were denied access to them. The lower court excused this violation on the grounds that the agents gave no advance notice of the request for the records other than the notice given at the time the request was made, and that the request was not made "dur-

ing business hours" which the court below interpreted to be from 9:00 a.m. to 5:00 p.m. In the first instance, there is no requirement in the law that advance notice be given of the request for records, only that the request be made during business hours. Appellee is a small private social club; there is no evidence in the record to indicate that it is even open during the hours of 9:00 a.m. to 5:00 p.m.[1] Furthermore, the agents testified without contradiction that they first went to the club at 8:00 p.m. on the evening of January 15 and that the club was closed. We conclude, therefore, that the lower court erred when it justified this violation on the grounds that the request for records was made during non-business hours. We interpret the phrase "business hours" to mean those hours when the premises are open for the transaction of business.

In finding No. 4, the court found "no substantial falsification" of appellee's liquor license renewal application. The original charge by the Board that gave rise to this issue involved appellee's answer to a question on the renewal application. Appellee answered "NONE" to item No. 4 on the application form which reads:

"4. ARREST RECORD. The following is a record of all arrests of new officers, directors, and the manager or steward. (Attach rider if necessary). If there have been no arrests insert the word 'None'."

In fact, one of appellee's officers had a record of 11 arrests. The lower court apparently reasoned 'that this falsification was not "substantial" because it felt that the mere fact of an arrest cannot be the basis for denying a renewal application. The court stated: "The Court specifically rejects the concept that because one of the officers was arrested that this can be the sole basis of rejecting the license." The Board, however, did not deny a renewal application because one of the officers had been

---

1. There was evidence that the club is open on Sunday afternoons.

arrested, but rather it revoked the liquor license because appellee did not reveal this information. Falsifying information often leads to more serious consequences than might result if the information hidden by the falsification had been revealed in the first instance. Appellee did in fact falsify information on the application. The court below may be correct in its belief that the fact that "one of the officers was arrested" is not a "substantial" reason for rejecting a renewal application, but it erred in using this belief as a basis for concluding that the falsification was de minimus. The court's reliance on *Flomar Bar Corporation Liquor License Case,* 30 Pa. D. & C. 2d 93 (1962), *aff'd,* 201 Pa. Superior Ct. 25, 191 A.2d 912 (1963), was misplaced. *See Pennsylvania Liquor Control Board v. Wisnoff Company, Grossman's Bar,* 13 Pa. Commonwealth Ct. 371, 318 A.2d 774 (1974).

The final issue involves the charge that "the charter of the licensed corporation was not in the possession of the original incorporators or their direct or legitimate successors." We hold that the court below capriciously disregarded the uncontradicted competent evidence in finding that this charge was in no way substantiated.

"The Court of Quarter Sessions 'does not have discretionary power to act in an arbitrary manner' in reversing an order of the Board: Enlisted Men's Club of Trafford Liquor License Case, 166 Pa. Superior Ct. 26, 70 A.2d 696. While it may reverse the Board upon finding a different set of facts, Philadelphia J-L Corporation Liquor License Case, 166 Pa. Superior Ct. 237, 70 A.2d 698, it cannot find facts which are not supported by the evidence, nor may it capriciously disregard competent evidence of violations by the licensee: Janiro's Liquor License Case, 163 Pa. Superior Ct. 398, 62 A.2d 102." *Heights Fire Company Liquor License Case.* 181 Pa. Superior Ct. 56, 60, 121 A.2d 902, 903-04 (1956).

The evidence reveals that the American and Croatian Singing Society, as it existed in 1969, terminated in July,

1969. It sold all its assets and distributed the proceeds among the members. *All the members and officers resigned.* Then in August 1969, appellee executed a renewal application bearing the signatures of two of the officers who had resigned and who no longer had any affiliation with appellee. All of this was uncontradicted. There were, therefore, no officers or members of the club qualified to execute the renewal application in August 1969. Furthermore, there was no evidence to indicate the authority of the persons executing the application to do so, nor any evidence of the transition of such authority by a valid action of the club. If such evidence existed, presumably it would have been in the possession of appellee. Appellee had the opportunity to present any such evidence before the Board and before the court in the de novo hearing. It did not do so, nor did it even indicate that such evidence might exist.

Accordingly, for the above stated reasons, we conclude that the lower court was not warranted in modifying the Board's order.

The order of the court below is reversed, and the order of the Board is reinstated.

---

CONCURRING OPINION BY JUDGE CRUMLISH, JR.:

Reluctantly, I concur. I must again reiterate the position I took in *Liquor Control Board v. Cassanese,* 8 Pa. Commonwealth Ct. 599, 602-03, 303 A. 2d 871, 873 (1973). There, as here, I pointed out that the Liquor Control Board's technical interpretation of the Act seemed inappropriate. Procedural purity should not be used to disguise personal conflicts and infirm investigations thereby jeopardizing citizens' rights and privileges.

If the Board or the investigators felt that the licensee was guilty of certain questionable and possibly illegal activity in the operation of the establishment, such objections should not be obscured by prevailing upon a technical reading of the Act to revoke the license.